## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LABORERS' PENSION FUND and
LABORERS' WELFARE FUND OF THE
HEALTH AND WELFARE DEPARTMENT
OF THE CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL OF
CHICAGO AND VICINITY, and JAMES S.
JORGENSEN, Administrator of the Funds,

                Plaintiffs,

     v.

ORLOWSKI CONSTRUCTION, INC., a
dissolved Illinois corporation, and ORLOWSKI
COMPANY, INC., an Illinois corporation, and
WESLEY J. ORLOWSKI, f/k/a WIESLAW J.
ORLOWSKI, individually,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

**JANUARY 2, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**PH**

**08 C 35**

Case No.

**JUDGE BUCKLO
MAGISTRATE JUDGE SCHENKIER**

### COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and

Welfare Department of the Construction and General Laborers' District Council of

Chicago and Vicinity (collectively "Funds") and James S. Jorgensen (hereinafter

"Jorgensen"), Administrator of the Funds, by their attorneys, Patrick T. Wallace, Jerrod

Olszewski, Christina Krivanek, Amy N. Carollo, and Charles Ingrassia and for their

Complaint against Defendants Orlowski Construction, Inc. a dissolved Illinois

corporation, and Orlowski Company, Inc., an Illinois corporation, and Wesley J.

Orlowski, f/k/a Wieslaw J. Orlowski, state:

## COUNT I

### (Failure To Pay Employee Benefit Contributions)

1.　　Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), and 28 U.S.C. §1331.

2.　　Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.　　The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4.　　Plaintiff James S. Jorgensen ("Jorgensen") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

2

5.    Defendant Orlowski Construction, Inc., (hereinafter "Company 1"), is a dissolved Illinois corporation.  Company 1 did and does business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.    Defendant Orlowski Company, Inc., (hereinafter "Company 2"), is an Illinois corporation.  Company 2 did and does business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

7.    The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and Company 1 have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2006.  ("Agreement 1"). (A copy of the "short form" Agreement entered into between the Union and Company 1 which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds Company 1 to the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

8.    The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and Company 2 have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2006.  ("Agreement 2"). (A copy of the "short form" Agreement entered into between the Union and Company 2 which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds Company 2 to the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit B.)

9.     The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association of Greater Chicago ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LCDMC"), the CARCO Industry Advancement Fund ("CARCO"), and Illinois Small Pavers Association ("ISPA") to act as an agent in the collection of contributions due to those funds.

10.     Agreement 1 and the Funds' respective Agreements and Declarations of Trust, obligate Company 1 to make contributions on behalf of its employees covered by Agreement 1 for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which Company 1, *inter alia*, identifies the employees covered under Agreement 1 and the amount of contributions to be remitted to the Funds on behalf of each covered employee.  Pursuant to the terms of Agreement 1 and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages plus interest.

11.     Agreement 1 and the Funds' respective Agreements and Declarations of Trust require Company 1 to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

12.    Agreement 1 obligates Company 1 to obtain and maintain a surety bond to insure future wages, pension and welfare contributions.

13.    Notwithstanding the obligations imposed by Agreement 1 and the Funds' respective Agreements and Declarations of Trust, Company 1 has:

(a)    failed to submit reports and contributions to Plaintiff Laborers' Pension Fund for the period of June, 2007 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)    failed to submit reports and contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of June, 2007 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)    failed to submit reports and contributions to Laborers' Training Fund for the period of June, 2007 forward, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(d)    failed to report and pay all contributions owed to one or more of the other affiliated funds identified above for the period of June, 2007 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries; and

(e)     failed to timely submit its May, 2007 benefits report thereby incurring $1,603.92 in liquidated damages which have not been paid.

14.     Company 1's actions in failing to make timely reports and contributions, violates Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185.

15.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, and the terms of Agreement 1 and the Funds' respective Trust Agreements, Company 1 is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid and contributions, liquidated damages on the untimely May, 2007 benefits report, audit costs, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Orlowski Construction, Inc.:

a.     ordering Company 1 to submit benefit reports and contributions for the time period of June, 2007 forward, and to submit its books and records for an audit upon demand;

b.     entering judgment in sum certain against Company 1 on the amounts due and owing pursuant to the June, 2007 forward reports and contributions, the $1,603.92 in liquidated damages on the untimely May, 2007 benefits report, and the audit, if any, including interest, liquidated damages, audit costs, and attorneys' fees and costs; and

c.     awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Pay Union Dues)

16.    Plaintiffs reallege paragraphs 1 through 12 of Count I.

17.    Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

18.    Notwithstanding the obligations imposed by Agreement 1, Company 1 has failed to withhold and/or report to and forward union dues that were deducted or should have been deducted from the wages of its employees for the period of June, 2007 forward, thereby depriving the Union of income and information.

19.    Pursuant to Agreement 1, Company 1 is liable to the Funds for the unpaid union dues, as well as liquidated damages, plus audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant Orlowski Construction, Inc.:

a.    entering judgment in sum certain against Company 1 on the amounts due and owing pursuant to the June, 2007 forward dues reports to be submitted, any delinquencies revealed by the audit, liquidated damages, audit costs, and attorneys' fees and costs; and

b.    awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Failure To Pay Employee Benefit Contributions)

20.     Plaintiffs reallege paragraphs 1 through 12 of Count I.

21.     Agreement 2 and the Funds' respective Agreements and Declarations of Trust, obligate Company 2 to make contributions on behalf of its employees covered by Agreement 2 for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which Company 2, *inter alia*, identifies the employees covered under Agreement 2 and the amount of contributions to be remitted to the Funds on behalf of each covered employee.  Pursuant to the terms of Agreement 2 and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages plus interest.

22.     Agreement 2 and the Funds' respective Agreements and Declarations of Trust require Company 2 to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

23.     Agreement 2 obligates Company 2 to obtain and maintain a surety bond to insure future wages, pension and welfare contributions.

24.     Notwithstanding the obligations imposed by Agreement 2 and the Funds' respective Agreements and Declarations of Trust, Company 2 has:

(a)     failed to submit reports and contributions to Plaintiff Laborers' Pension Fund for the period of May, 2007 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)      failed to submit reports and contributions to Plaintiff Laborers' Welfare
Fund of the Health and Welfare Department of the Construction and General Laborers'
District Council of Chicago and Vicinity for the period of May, 2007 forward, thereby
depriving the Welfare Fund of contributions, income and information needed to
administer the Fund and jeopardizing the health and welfare benefits of the participants
and beneficiaries;

(c)      failed to submit reports and contributions to Laborers' Training Fund for
the period of May, 2007 forward, thereby depriving the Laborers' Training Fund of
contributions, income and information needed to administer the Fund and jeopardizing
the training fund benefits of the participants and beneficiaries; and

(d)      failed to report and pay all contributions owed to one or more of the other
affiliated funds identified above for the period of May, 2007 forward, thereby depriving
said fund(s) of contributions, income and information needed to administer said fund(s)
and jeopardizing the benefits of the participants and beneficiaries.

25.      Company 2's actions in failing to make timely reports and contributions,
violates Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA.  29
U.S.C. §185.

26.      Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section
301 of the LMRA, 29 U.S.C. §185, and the terms of Agreement 2 and the Funds'
respective Trust Agreements, Company 2 is liable to the Funds for unpaid contributions,
as well as interest and liquidated damages on the unpaid contributions, audit costs,
reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court
deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Orlowski Company, Inc.:

a.      ordering Company 2 to submit benefit reports and contributions for the time period of May, 2007 forward, and to submit its books and records for an audit upon demand;

b.      entering judgment in sum certain against Company 1 on the amounts due and owing pursuant to the May, 2007 forward reports and contributions, and the audit, if any, including interest, liquidated damages, audit costs, and attorneys' fees and costs; and

c.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT IV

### (Failure To Pay Union Dues)

27.     Plaintiffs reallege paragraphs 1 through 12 of Count I, paragraphs 17 through 18 of Count II, and paragraphs 21 through 24 of Count III.

28.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

29.     Notwithstanding the obligations imposed by Agreement 2, Company 2 has failed to withhold and/or report to and forward union dues that were deducted or should have been deducted from the wages of its employees for the period of May, 2007 forward, thereby depriving the Union of income and information.

30.    Pursuant to Agreement 2, Company 2 is liable to the Funds for the unpaid union dues, as well as liquidated damages, plus audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant Orlowski Company, Inc.:

a.    entering judgment in sum certain against Company 2 on the amounts due and owing pursuant to the May, 2007 forward dues reports to be submitted, any delinquencies revealed by the audit, liquidated damages, audit costs, and attorneys' fees and costs; and

b.    awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT V

### (Successor Liability, Alter Ego Liability, Single Employer Liability)

31.    Plaintiffs reallege paragraphs 1 through 30 of this Complaint.

32.    Defendant Company 2 is a successor to, alter ego of, and/or a single employer with Company 1.  Company 2 used and uses the same equipment formerly and currently used by Company 1; used and uses the same employees formerly and currently employed by Company 1; performed and performs the same type of work formerly and currently performed by Company 1; operates its business from the same location formerly and currently used by Company 1; uses the same phone number formerly and currently used by Company 1; is managed by and/or had its work supervised by the same personnel who managed and/or supervised and manage and/or supervise the work

performed by Company 1; Company 2 uses the same financial institution as Company 1; Company 2 has commingled funds with Company 1 and paid debt of Company 1.

33.     Defendant Wesley J. Orlowski, f/k/a Wieslaw J. Orlowski, (hereinafter "Orlowski") and Ewa Orlowski are the owners of Defendants Company 1 and Company 2.

34.     Orlowski and Ewa Orlowski direct, control, and manipulate the activities of Company 1 and Company 2.

35.     Company 2 was formed by Orlowski and Ewa Orlowski to avoid Company 1's obligations under the Agreement and the Funds' Agreements and Declarations of Trust.

36.     Company 2 admitted to being a successor to, alter ego of, single employer with, Company 1, in an Installment Note it entered into with the Funds on or about February 14, 2007 and set forth infra in Count VI of this Complaint.

37.     As a successor, alter ego, single employer, Company 1 and Company 2 are liable for the debts of each other corporation.

WHEREFORE, Plaintiffs respectfully request this Court to enter judgment against Defendants Orlowski Construction, Inc. and Orlowski Company, Inc. as follows:

(a)     Finding that Orlowski Company, Inc. is a successor to, alter ego of, single employer with, Orlowski Construction, Inc.;

(b)     Finding that Orlowski Company, Inc. and Orlowski Construction, Inc. are jointly and severally liable to the Funds for the delinquent contributions, dues, interest, liquidated damages and attorneys' fees and court costs as set forth in Counts I, II, III, and IV;

      (c)     Ordering Orlowski Company, Inc. to submit its books and records to an audit upon demand, and pay the Funds all delinquent contributions, interest, liquidated damages and audit costs; and

      (d)     Granting all such other legal and equitable relief as the Court deems just and proper.

## COUNT VI

### (Default on Installment Note)

38.     Plaintiffs reallege paragraphs 1 through 12 of Count I, paragraphs 17 through 18 of Count II, paragraphs 21 through 24 of Count III, paragraphs 28 through 30 of Count IV, and paragraphs 31 through 37 of Count V.

39.     Company 1 and Company 2 entered into an Installment Note ("Note") with the Funds on or about February 14, 2007 to submit payment of contributions owed to the Funds for the audit of Company 1 for the period of January 1, 2003 through July 31, 2006. A true and accurate copy of the Note is attached hereto as Exhibit C.

40.     Defendant Orlowski signed a Guaranty of Payment and Indemnification ("Guaranty") on or about February 14, 2007 individually guaranteeing payment of the amounts due under the Note to the Funds. A true and accurate copy of the Guaranty is attached hereto as Exhibit D.

41.     Paragraph 6 of the Note provides that

> Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Fund's respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which the payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Fund's respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest

and liquidated damages. Further, in the event Company 1 and Company 2 fail to timely make any payments described in this Note, all amounts described in Paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event Company 1 and Company 2 further agrees [sic] to pay all attorney fees and costs incurred by the Funds in any action to enforce any part or all of this note.

42.    Paragraph 7 of the Note provides that

This Installment Note is conditioned on Company 1 and Company 2 staying current on their obligations to the Funds under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that Company 1 and Company 2 fail to maintain their obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no[t] limited to, its obligations to submit timely contribution reports and to make timely contribution payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

43.    Paragraph 1 of the Guaranty provides that

<u>Guaranty of Payment and Indemnification</u>. The undersigned guarantees, absolutely and unconditionally; (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the six (6) month payment period including interest and liquidated damages for late or unpaid payments due on the note; and (b) the full and complete payment of any an all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgement [sic] bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor. . . . The Guarantor also agrees to be personally liable for all monthly benefit contributions and/or union dues owed from the Company to the Funds, the District Council and all ancillary funds that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

44.    Paragraph 10 of the Guaranty provides that

Expenses. The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company 1 and Company 2's Obligations under the Note.

45.    Pursuant to the Note, Company 1 and Company 2 were to pay at the time of executing the Note a 20% downpayment and payment in full of all ancillary funds, and thereafter beginning on March 1, 2007, make six consecutive monthly payments of $5,617.53 to the Health and Welfare Fund, and $3,922.14 to the Pension Fund, make their monthly installment payments by the 1st of the month, with the payment being considered late if unpaid after an additional 10 days; and submit and pay their monthly benefit and dues reports and contributions.

46.    Company 1 and Company 2 paid the 20% downpayment, paid the ancillary funds in full, and made five of the six monthly Note payments. Company 1 and Company 2 failed to pay their sixth payment which was due September 1, 2007, and therefore are in default on the Note.

47.    Company 1 has failed to submit its June, 2007 forward benefits and dues reports and contributions as set forth in Counts I and II, and is therefore in default on the Note. Company 2 has failed to submit its May, 2007 forward benefits and dues reports and contributions as set forth in Counts III and IV, and is therefore in default on the Note.

48.    Orlowski, as Guarantor of the Note, is also liable for the amounts due under the Note, including the sixth payment of $5,617.53 to Health and Welfare and $3,922.14 to Pension, and as set forth in Counts I, II, III, and IV of this Complaint, Company 1's June, 2007 forward benefits and dues reports and contributions, and Company 2's May, 2007 forward benefits and dues reports and contributions.

49.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, the terms of Agreement 1 and Agreement 2, the Funds' respective Trust Agreements, and the terms of the Note and the Guaranty, Company 1 and Company 2 and Orlowski are liable to the Funds for the full balance of the Note, including liquidated damages on the late Note payments, Company 1's June, 2007 forward benefits and dues reports and contributions, and Company 2's May, 2007 forward benefits and dues contributions, including liquidated damages and interest, and attorneys' fees and costs incurred by the Funds in enforcing the Note and Guaranty.

50.     Company 1, Company 2, and Orlowski's actions in defaulting on the Note violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA, 29 U.S.C. §185, and federal common law.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendants Orlowski Construction, Inc., Orlowski Company, Inc., and Wesley J. Orlowski, f/k/a Wieslaw J. Orlowski, joint and severally:

a.     entering judgment in sum certain against Company 1 and Company 2 and Orlowski on the amounts due and owing on the defaulted Note, plus interest and liquidated damages, and the attorneys' fees and costs incurred by the Funds in enforcing the terms of the Note and Guaranty; and

b.     awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

January 2, 2008                                    Laborers' Pension Fund, et al.


                                                  /s/ Jerrod Olszewski
                                                  Jerrod Olszewski

16

Patrick T. Wallace
Jerrod Olszewski
Christina Krivanek
Amy N. Carollo
Charles Ingrassia
Laborers' Pension and Welfare Funds
Sub Office, 111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540



ORLOWSKI CONST.

HEADQUARTERS OF

# Construction & General Laborers'
# District Council of Chicago and Vicinity

Affiliated with the Laborers International Union of North America, A. F. of L. - C. I. O.

6121 WEST DIVERSEY AVENUE • CHICAGO, ILLINOIS 60639 • TELEPHONE: 237-7537

LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092, 1084  *

Joseph A. Lombardo, Jr.
Secretary-Treasurer

Ernest Kumerow
President
Business Manager

## LABORERS' INTERIM COLLECTIVE BARGAINING AGREEMENT

### ORLOWSKI CONST.

It is hereby stipulated and agreed by and between herein called the "EMPLOYER," and the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION," representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092 and 1084, and encompassing the geographical area or the Counties of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry, and Boone, in the State of Illinois, together with any other facts which may come within the jurisdiction of the UNION, that:

WHEREAS the Mid-America Regional Bargaining Association (MARBA) on behalf of the Employer Associations it represents in area wide bargaining and the UNION have not reached a bargaining agreement to be effective June 1, 1991 and

WHEREAS the parties to this Agreement desire continued employment in the industry, prevent disruption of work, strikes, picketing and inconvenience to the public.

It is therefore agreed as follows:

1. EMPLOYER, in response to the UNION's claim that it represents an unnamed majority of such EMPLOYER' laborer employees, acknowledges and agrees that there is no good faith doubt that the UNION has been authorized to and in fact does represent such majority of laborer employees. Therefore, the UNION is hereby recognized as the sole and exclusive collective bargaining representative for the employees now or hereafter employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment in accordance with Section 9 of the National Labor Relations Act without the need for a Board conducted election.

2. The EMPLOYER acknowledges that he has been or at terms and conditions of the Collective Bargaining Agreement between the UNION and the Associations as applicable to him which expired at 12:00 midnight, May 31, 1991, and hereby reaffirms his continuing obligation with respect to all such provisions, acknowledges the renewal of all such provisions to the extent the same are not inconsistent with the provisions of this Agreement, and hereby expressly his changes to this Agreement between the UNION and the Associations and all subsequent amendments thereto and to any other changes subsequently negotiated by and between the UNION and the applicable Association. Said contracts are specifically incorporated by reference and made a part hereof. In the event of a conflict this Interim Agreement shall supersede and control.

3. The Collective Bargaining Agreement between the UNION and Associations (effective June 1, 1991, and all subsequent amendments thereto) are incorporated herein as if they were set forth in full. The EMPLOYER agrees to be bound by the terms of the applicable Association bargaining agreement for his of the negotiated agreement upon its ratification and acceptance.

4. The EMPLOYER affirms and adopts the Collective Bargaining Agreement between the UNION and the Builders Association of Chicago and Vicinity, the Concrete Contractors Association of Greater Chicago, the Illinois Road Builders Association, the Underground Contractors Association, Mason Contractors Association of Greater Chicago, Street Paving and Ground Separation Contractors, Chicagoland Association of Wall and Ceiling Contractors, Chicago Building Wreckers Association, Lumber Trade Association, Lake County Contractors Association, Lake County Paving Contractors Association and Sewer Contractor Association, Association of Wall and Ceiling Contractors of Lake County, Fox Valley General Contractors Association, Contractors Association of Will and Grundy Counties, and all other associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1991, together with all amendments thereto. It is further agreed that when a contractor works in the jurisdiction of any local UNION, then the agreement of the local UNION is herein specifically incorporated in this agreement and shall supersede the standard District Council agreements in the case of any conflict between the District Council agreement and the local agreement having to do with wages, benefits, or conditions of employment. Nothing herein shall limit the jurisdiction of this agreement to less than that provided in this Interim Agreement

5. The EMPLOYER agrees to pay the amounts which he/it is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFAIR- IN PAYMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, to the LABORERS' PENSION FUND, and LABORERS' TRAINING FUND, and to become bound by and be considered a party to the Agreements and the Declarations of Trust creating said trust Funds as if he/it had signed the original copies of the Trust instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees designated in the manner provided in said Agreement and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust instruments.

The EMPLOYER further affirms and re-establishes that all of his contributions past to the Welfare, Pension and Training Funds were made by duly authorized agents of the EMPLOYER at the proper rates for the appropriate periods of time and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

6. Employees covered by this Interim Agreement shall retain all the work traditionally performed by laborers. The EMPLOYER agrees that he will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by a collective bargaining agreement with the Laborers' District Council of Chicago and Vicinity. Any EMPLOYER who contracts out of subcontracts any of his work coming within the jurisdiction of the UNION shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER's violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

7. Employer agrees to pay an increase of Seventy Five ($.75) Cents per hour in wages to equal $18.00 per hour in wages for the period June 1, 1991 to May 31, 1992 and thereafter such amounts the UNION may allocate in its sole discretion. For the period June 1, 1991 to May 31, 1992, EMPLOYER agrees to pay the present contribution rate of $1.97 welfare and $1.00 pension plus such additional sums as the UNION notices EMPLOYER are due and owing.

8. In the event any change in the ownership, management or operation of the Employer's business by sale or otherwise, it is agreed that as a condition of such transfer of change it shall be provided in the instrument effecting the change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the Employer, whether corporate or otherwise.

10. That this document is the complete written agreement between the parties and can only be amended in writing by the parties. No other oral representations shall be binding on either party nor shall any party rely upon such oral statements that vary the terms of the written contract.

11. In the event subsequent negotiations between the Associations and the UNION increase the benefits beyond those provided in this Agreement, then all additional benefits shall be paid retroactive to June 1, 1991. If, however, the Agreement between the Associations and the UNION requires payment of less than that required herein, then neither the UNION, the Funds nor the employees shall be required to reimburse the Employer for any monies paid pursuant to the terms of this Interim Agreement. It is further understood and agreed that, should the negotiations between the UNION and the applicable Associations result in an economic settlement, in excess of the increase provided for by this Agreement, then this Agreement shall be automatically amended to provide for any such additional increase.

12. This Agreement shall become effective at 12:01 a.m. June 1, 1991 and shall remain in full force and effect until 12:00 midnight, May 31, 1992 or the length of the newly negotiated Associations area wide contract, whichever is longer, and shall continue thereafter unless there has been given not less than sixty (60) nor more than ninety (90) days written notice by registered or certified mail prior to expiration by either party hereto of the desire to modify, amend or terminate this Agreement through negotiations. In the essence of such notice the Employer and the UNION agree to be bound by the new area wide negotiated contracts with the applicable Association incorporating them into this Interim Agreement and becoming the new Agreement for the life of this newly negotiated contracts.

13. The Employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The Employer further acknowledges receipt of a copy of the complete Joint Working Agreement.

IN WITNESS WHEREOF, and in consideration of the mutual promise of the parties hereto, and other good valuable consideration, this Agreement was entered into this 17 day of May 1992.

ACCEPTED:

Laborers' Local Union No. _____

By: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _Ernest Kumerow_____

By: _Joseph A. Lombardo, Jr._____

ORLOWSKI CONSTR. INC.

(Andrew) PRESIDENT

9141 DAMEN AVE.

(312) 381-6209



TRUST FUND

EXHIBIT
A



# CONSTRUCTION & GENERAL LABORERS
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
### AFFILIATED WITH THE LABORERS INTERNATIONAL UNION OF NORTH AMERICA
999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-0853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **ORLOWSKI COMPANY INC** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** The Employer recognizes the Union as the sole and exclusive collective bargaining representative for the employees now and hereinafter employed in the Laborer bargaining unit with respect to wages, hours and other terms and conditions of employment. If majority recognition previously was granted under Section 9(a) of the Act, it shall remain in effect. Otherwise, recognition under Section 9(a) of the Act shall automatically be granted to the Union without the need for a Board certified election upon the Union's demonstration that a majority of the employees have designated the Union as their exclusive bargaining representative. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension hereof, without written approval from the Union. The Employer shall abide by this Agreement, and all extensions hereof, provided that it employs at least one Laborer during the term of this Agreement or the term of any extension hereof.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Fall Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Gypsum Drywall Contractors of Northern Illinois/Chicagoland Association of Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Lake County Contractors Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $2.99 per hour effective June 1, 2006; $3.00 per hour effective June 1, 2007; $3.00 per hour effective June 1, 2008 and $3.10 per hour effective June 1, 2009. Said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2006, the minimum wage rate shall be $31.55 per hour.

4. **Dues Checkoff.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in the amount of 1.75% of gross wages or such other amount as directed by the Union, and shall remit monthly to the designated Union office the sums as deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended from time to time, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its Laborer employees are required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to or covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. If the Employer contracts or subcontracts any such covered work to any person or proprietor who is not signatory to this Agreement, the Employer shall require such subcontractor to be bound by all the provisions of this Agreement, or the Employer shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payments to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund, and the Construction and General Laborers' District Council of Chicago and Vicinity Joint Apprentice and Training Trust Fund. The Employer shall further assume the obligations of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds as if it had signed the original copies of the trust instruments and amendments thereto. The Employer ratifies and confirms the appointment of the employer trustees who shall, together with their successor trustees, carry out the terms and conditions of the trust instruments. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreement.

8. **Contract Enforcement.** All grievances arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall require or entitle the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is an addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2006 (unless dated differently below) through May 31, 2010, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept the facsimile signatures on this Agreement as if they were the original signatures.

Dated: __MAY 1__, 20 _07_.

ACCEPTED:

Laborers' Local Union No. ___6___

By: _____
CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
James P. Connolly, Business Manager

By: _____
Frank Riley, President & Secretary-Treas.

For Office Use Only:

Effective June 1, 2006    WHITE - LOCAL UNION    •    CANARY - TRUST FUND    •    PINK - DISTRICT COUNCIL    •    GOLD - EMPLOYER

__ORLOWSKI COMPANY INC__
(Employer)

FEIN No.: __35-2272127__

By: __EWA ORLOWSKI__
(Print Name and Title)

__Ewa Olowski__
(Signature)

__2524 W. HURON St.__
(Address)

__Chicago, IL. 60612-1105__
(City, State and Zip Code)

__773-988-0658__
(Telephone/Telefax)

RECEIVED JUL 26 2007 FIELD DEPT.

EXHIBIT B

## INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund") and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Health and Welfare Fund" or collectively the "Funds"), the parties of the first part, and Orlowski Construction, Inc. ("Company 1") and Orlowski Company, Inc. ("Company 2"), the parties of the second part.

WHEREAS, Company 1 has at all relevant times been party to a collective bargaining agreement ("CBA") with Local 1 of the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues;

WHEREAS, Company 1 and Company 2 have failed to timely pay certain contributions owed to the Funds for the audit period of January 1, 2002 through July 31, 2006.

WHEREAS, Company 2 is a successor to / alter ego of / single employer with Company 1 and desires to be liable for and ensure payment of Company 1's debt to the Funds.

WHEREAS, Company 1 and Company 2 desire to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, and attorneys fees and costs as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

### THE PARTIES HEREBY AGREE as follows:

1. Company 1 and Company 2 will pay $41,001.40 to the Health and Welfare Fund (comprised of $38,525.35 in delinquencies, liquidated damages, interest, and audit costs, and $2,476.05 in attorney fees and costs. Company 1 and Company 2 will also pay $28,339.29 to the Pension Fund (comprised of $25,863.25 in delinquencies, liquidated damages, interest, and audit costs, and $2,476.05 in attorney fees and costs. All of these amounts shall be paid according to the schedule described below in paragraphs 3 and 6.

2. Company 1 and Company 2 will also pay $1,167.63 to the Training Fund (comprised of $820.69 in delinquent contributions, $82.06 in liquidated damages and $264.97 in interest), $480.80 to the IAF/Safety Fund (comprised of $337.90 in delinquent contributions, $33.79 in liquidated damages and $109.11 in interest), $426.51 to the LECET Fund (comprised of $311.31 in delinquent contributions, $31.13 in liquidated damages and $82.07 in interest), $1,018.55 to the LDCMC Fund (comprised of $747.12 in delinquent contributions, $74.71 in liquidated damages and $196.72 in interest) $68.72 to the CISCO Fund (comprised of $49.28 in delinquent contributions, $4.83 in liquidated damages, and $15.61 in interest) and $3,762.04 in union dues (comprised of $3,420.04 delinquent contributions and $342.00 in liquidated damages). These delinquent amounts shall be paid in their entirety at the time payment under this Note commences, in accordance with the schedule described in paragraph 3.

3. For twelve (6) consecutive months, commencing on March 1, 2007 and ending on August 1, 2007, Company 1 and Company 2 will pay $5,617.53 per month to the Health and Welfare Fund and $3,922.14 per month to the Pension Fund.

4. Company 1 and Company 2 will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

5. Company 1 and Company 2 understand and agree that this Installment Note is based on reports submitted by Company 1 to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.

6. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Fund's respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Fund's respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of

1


EXHIBIT

Feb-26-2007 09:55am From-FIELD DEPT 17089477285 T-264 P.003 F-954
Case 1:08-cv-00035 Document 1 Filed 01/02/2008 Page 21 of 25

Feb-19-2007 09:29am From-LABORERS PENSION +3126621489 T-359 P.003/003 F-802

interest and liquidated damages. Further, in the event Company 1 and Company 2 fail to timely make any payments described in this Note. All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event Company 1 and Company 2 further agrees to pay all attorney fees and costs incurred by the Funds in any action to enforce any part or all of this note.

7. This Installment Note is conditioned on Company 1 and Company 2 staying current on their obligations to the Funds under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that Company 1 and Company 2 fail to maintain their obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution reports and to make timely contribution payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

8. Company 1 and Company 2 further agree to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

9. Company 1 and Company 2 shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the 18th day of July, 2006.

COMPANY 1 NAME
Orlowski Construction, Inc.

By: _____
Wesley Orlowski f/k/a Wieslaw Orlowski

Title: _____

COMPANY 2 NAME
Orlowski Company, Inc.

By: _____
Wesley Orlowski, f/k/a Wieslaw Orlowski

Title: _____

Laborers' Pension Fund

By: _____
James S. Jorgensen, Administrator

Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.

By: _____
James S. Jorgensen, Administrator

2

# GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty (Guaranty") is made as of ~~January~~ February **14,** 2007 by the undersigned, Wesley Orlowski f/k/a Wieslaw Orlowski, (the "Guarantor"), to and for the benefit of the **LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY** (collectively, the "Funds").

WHEREAS, **Orlowski Construction, Inc.** ("Company 1") and **Orlowski Company, Inc.** ("Company 2") have agreed to pay a total of **$76,262.95** to the Funds in settlement of the delinquent contributions owed to the Funds and to be paid under the terms of an Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the Guarantor executes this Guaranty; and

WHEREAS, the Guarantor has a financial interest in Company 1 and Company 2 and will be benefited by the Note;

NOW WHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1.   Guaranty of Payment and Indemnification.   The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the six (6) month payment period; and (b) the full and complete payment of any all fees, costs as such default is based upon a default under the terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate leves or in pre- or post- judgement bankruptcy proceedings), in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations").

2.   Continuing Guaranty. This Guaranty shall be a continuing Guaranty, and shall note be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the part of Company 1 and Company 2 with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that Company 1 and Company 2 or any of the party thereto may have to the performance or observance of any term, covenant or condition contained tin the Note; (e) the existence or non-existence of Company 1 and Company 2 as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of Company 1 and Company 2's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of Company 1 and Company 2 or any discharge or limitation of the disability of Company 1 and Company 2, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3.   Waivers. Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty.  It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omision or thing which might otherwise operate  as a legal or equitable discharge of Guarantor, until all of Company 1 and Company 2's obligations shall have been fully paid and performed.

4.   Subrogation.   Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the guarantor expressly waive with respect to Company 1 and Company 2 any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against Company 1 and Company 2 in connection with or as a result of Guarantor' execution, delivery and/or

1

EXHIBIT

D

bobbie

performance of this Guaranty or the Note. The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other period (including and surety), either directly or as an attempted set off to any action commenced against the Guarantor by Company 1 and Company 2 (as borrower or in any other capacity) or any other person.

5.  Independent Obligations.  The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds form suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6.  Acceleration.  IN the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7.  Effect of Bankruptcy.  This Guaranty shall continue in full force and effect notwithstanding the institution by or against Company 1 and Company 2 of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8.  Termination.  This Guaranty shall remain in full force and effect as to the Guarantor until all of Company 1 and Company 2's Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of Company 1 and Company 2's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of Company 1 and Company 2's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9.  Company 1 and Company 2's Financial Condition.  The guarantor assumes full responsibility for keeping fully informed of Company 1 and Company 2's financial condition and all other circumstances affecting Company 1 and Company 2's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about Company 1 and Company 2's financial condition or any circumstances bearing on its ability to perform.

10.  Expenses.  The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of Company 1 and Company 2's Obligations under the Note.

11.  Delay, Cumulative Remedies.  No delay or failure by the Funds to exercise any right to remedy against Company 1 and Company 2 or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against Company 1 and Company 2 and the Guarantor are cumulative.

12.  Binding Effect.  This guaranty shall incur to the benefit of any may e enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

13.  Default.  The Guarantors hereby authorize irrevocably any attorney of any court of record to appear for them in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and

2

confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The guarantor agrees to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. **Warranties.** Guarantor makes to the Funds the following representations and warranties:

(a) **Authorization.** Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

(b) **No Conflict.** The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) **Litigation.** There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality which involve any of the transactions herein contemplated, or the possibility of any judgement or liability which may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgement, order, writ, injunction, decree, rule or regulation of any court.

(d) **Enforceability.** This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. **Notices.** All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in period, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantor:

In Case of the Funds:

Office of Fund Counsel
Jerrod Olszewski
53 W. Jackson, Suite 550
Chicago IL 60604

3

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor's attorney, _____. But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

16. **Additional Waivers.** Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. **Severability.** If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. **Applicable Law: Venue.** This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and enter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. **Time is of the Essence.** Time is of the essence of this Guaranty as to the performance of the undersigned.

20. **Death of a Guarantor.** In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this instrument as of the date and year first above written.

_____
Wesley Orlowski

Social Security Number

Date: _____


APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR:

_____

Dated: _____

4