JUNE 1, 2006 TO MAY 31, 2010

# AGREEMENT

between the

CHICAGO AREA INDEPENDENT
CONSTRUCTION ASSOCIATION

and the

CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL
OF CHICAGO AND VICINITY

affiliated with the

LABORERS' INTERNATIONAL UNION
OF NORTH AMERICA





EXHIBIT D-3

| Article | | Page |
|---|---|---|
| | | Page |
| XIX | REPORTING FOR WORK | 52 |
| XX | PAYDAY | 53 |
| XXI | WAGES | 53 |
| **ROAD BUILDING:** | | |
| XXII | HOURS AND OVERTIME | 55 |
| XXIII | HOLIDAYS | 56 |
| XIV | SHIFT WORK | 56 |
| XXV | PAYDAY | 57 |
| XXVI | REPORTING FOR WORK | 58 |
| XXVII | WAGES | 59 |
| **SEWER, TUNNEL AND RELATED UNDERGROUND:** | | |
| XXVIII | JOB NOTIFICATION AND PRE-JOB CONFERENCE NOTIFICATION | 61 |
| XXIX | WAGES | 62 |
| XXX | WORK HOUR, OVERTIME HOLIDAYS AND ELECTION DAYS | 63 |
| XXXI | SHIFT WORK | 65 |
| XXXII | WORK RULES AND CONDITIONS | 66 |
| **KANE, KENDALL, McHENRY AND BOONE:** | | |
| XXXIII | WORKING CONDITIONS | 69 |
| XXXIV | WAGES | 69 |
| **WILL AND GRUNDY:** | | |
| XXXV | STEWARDS | 72 |

| | Page |
|---|---|
| ... | 5 |
| ... | 5 |
| ... | 6 |
| CHECK-OFF & DUES DEDUCTIONS | 6 |
| SUBCONTRACTING | 8 |
| WAGES | 9 |
| BONDING | 15 |
| INDUSTRY FUND | 17 |
| PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS | 18 |
| STEWARDS | 22 |
| TRAINING AND APPRENTICE PROGRAM | 24 |
| SETTLEMENT OF DISPUTES | 26 |
| BRANCHES OF WORK | 28 |
| ALCOHOL AND SUBSTANCE ABUSE | 44 |
| SUCCESSORS AND ASSIGNS | 45 |
| HOURS AND OVERTIME | 45 |
| MULTIPLE SHIFTS | 46 |
| SUNDAY, HOLIDAYS & ELECTION DAYS | 47 |
| PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS | 48 |

| Article | | Page |
|---|---|---|
| XXVI | WAGES | 73 |
| XXVII | FOREMAN AND GENERAL FOREMAN | 76 |
| | SHIFT WORK | 77 |
| | OTHER PAY RATES | |
| | BUILDING CONSTRUCTION AND HIGHWAY | 77 |
| | | 80 |
| | | 80 |
| | | 83 |

## TERM OF CONTRACT

This AGREEMENT entered into this 1st day of June, 2006, for Cook, DuPage, Lake, Will, Grundy, Kendall, Kane, McHenry and Boone Counties by and between the CHICAGO AREA INDEPENDENT CONSTRUCTION ASSOCIATION, hereinafter referred to as EMPLOYER, and CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, for and on behalf of its affiliated Local Unions, hereinafter referred to as the UNION, shall remain in full force and effect until 11:59 p.m. on May 31, 2010.

If either party wishes to modify this Agreement, it shall serve written notice by certified or registered mail, upon the other party not less than sixty days prior to May 31, 2010 of its intent to begin negotiations for a new Agreement. In the absence of the service of such notice, this Agreement shall automatically renew itself, together with all amendments and improvements as negotiated after said initial expiration date, by and between the parties in area-wide bargaining, from year to year thereafter.

## Article 1
## EQUAL OPPORTUNITY

The parties agree that Employees will not be discriminated against because of race, creed, religion, color, age, sex or national origin.

The masculine gender has been used in this Agreement to facilitate ease of writing and editing and therefore the masculine gender shall include the feminine gender. Whenever the words "he", "him", "his", or "man" is used, they shall be read and construed as "he or she", "him or her", "his or hers", and "man or woman", respectively.

4

5

Article 4
SUBCONTRACTING

Paragraph 1. On work covered by this Agreement, the contractor or subcontractor agrees to see that all subcontractors on work within the Union's jurisdiction on this job site adhere to the wages and fringes contained in this Agreement when the subcontract is let by the contractor or subcontractor. If, upon the Union's request, the subcontractor chooses to sign a current labor agreement with the Union (although such signing might not be required under Paragraph 1), then the contractor shall be relieved of any liability under this Paragraph 1.

Paragraph 2. The Employer agrees that it will not contract or subcontract any work covered by this Agreement to be done at the site of construction, alteration, painting or repair of a building, structure of other work, except to a person, firm or corporation that is party to the applicable collective bargaining agreement with the Union.

Paragraph 3. If an Employer, bound to this Agreement, contracts or subcontracts any work covered by this Agreement to be done at the jobsite of the construction, alteration, painting or repair of a building, structure or other work to any person or proprietor who is not signatory to this Agreement, the Employer shall require such subcontractor to be bound by all the provisions of this Agreement, or the Employer shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payments to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund, and the Construction and General Laborers' District Council of Chicago and Vicinity Joint Apprentice and Training Trust Fund.

8

Article 5
WAGES

Paragraph 1. The rates of wages exclusive of fringe benefits to be paid in this trade for the period June 1, 2006 to and including May 31, 2010, shall be as set forth below for the respective following classifications as further defined herein.

The wage rates include a total economic increase of $2.90 per hour effective June 1, 2006 to May 31, 2007 to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion, for a wage rate of $31.55 per hour, which includes the dues deduction; June 1, 2007 to May 31, 2008, $3.00 per hour total economic increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion; June 1, 2008 to May 31, 2009, $3.00 per hour total economic increase to be allocated between wages and fringe benefits by the Union in its sole discretion; June 1, 2009 to May 31, 2010, $3.10 per hour total economic increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. The foregoing allocations may include allocations to LECET and LDC/LMCC.

Dosimeter Use: A premium of One ($1.00) Dollar per hour shall be paid to any Laborer required to work with a dosimeter used for monitoring nuclear exposure or with any similar instrument or measuring device.

Power Pac: When a Laborer uses a power driven piece of equipment he shall be paid the rate of pay of the tool at the end of the power pac.

Apprentice wages: Apprentice Laborers shall be paid according to the following schedule:

Apprentices (1st 6 months) . . . . . . . . . 60% of base rate:
Apprentices (2nd 6 months) . . . . . . . . 70% of base rate:
Apprentices (3rd 6 months) . . . . . . . . 80% of base rate:
Apprentices (4th 6 months) . . . . . . . . 90% of base rate:
Apprentices (after 24 months) . . . . . . 100% of base rate:

9

Should the Union enter into an agreement with the Builders Association of Greater Chicago, the Mason Contractors Association of Greater Chicago, the Illinois Road and Transportation Builders Association, the Underground Contractors Association, the Fox Valley General Contractors Association, the Lake County Contractors' Association, or the Contractors Association of Will and Grundy Counties that provides an annual total economic increase different than the annual total economic increase set forth in this paragraph, then such rates shall be incorporated into the applicable portion(s) of this Agreement that correspond to the trade and geographic scope of such association agreement.

**Paragraph 2. WELFARE:** Beginning the period from June 1, 2006 to May 31, 2007, the Employer agrees to make Health and Welfare contributions of $7.46 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages herein stipulated. This $7.46 per hour shall be paid to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity or a designated appointee at the end of each month.

That for the periods June 1, 2007 to May 31, 2008; June 1, 2008 to May 31, 2009; June 1, 2009 to May 31, 2010; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Paragraph 1 above)

The Employer agrees to bound by the Agreements and Declarations of Trust establishing the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, as well as any amendments thereto.

**Paragraph 3. PENSION:** Beginning June 1, 2006 the Employer agrees to make a pension contribution of $4.84 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages and welfare payments herein stipulated. This $4.84 per hour shall be paid to the Laborers' Pension Fund or to a designated appointee at the end of each month.

That for the periods June 1, 2007 to May 31, 2008; June 1, 2008 to May 31, 2009; June 1, 2009 to May 31, 2010; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Paragraph 1 above)

The Employer agrees to bound by the Agreements and Declarations of Trust establishing the Laborers' Pension Fund, as well as any amendments thereto.

The parties agree that the Employer shall make lump sum contributions to employee fringe benefit accounts, administered by the Trustees on behalf of each employee. It is further agreed that such contribution shall be accompanied by a breakdown of payment according to appropriate benefits.

The Trustees of the Welfare Fund and the Trustees of the Pension Fund shall, among other things, have authority to determine the type and amount of benefits to be provided in each of said funds, the eligibility rules governing entitlement to benefits, and whether and to what extent benefits are to be provided for covered Employees.

The failure of the Employer to contribute to the said Welfare or Pension Funds when the same is established, as provided herein, shall for the purposes of the remedies the Union may pursue, be deemed the same as the failure of the Employer to pay wages, and the Union shall be permitted to remove workers whom they represent for non-payment of such contributions, anything to the contrary in this Agreement notwithstanding.

A grace period of thirty (30) days shall be granted for Employers to submit reports and contributions as provided. Said reports and contributions not received during this grace period shall be assessed liquidated damages

amounting to ten (10%) percent of the amount of the contributions which are owed. The Employer acknowledges that the liquidated damages shall be used to defer administrative costs arising by said delinquency and acknowledges the costs to be actual and substantial, though difficult to ascertain. However, the Employer acknowledges these costs to be at a minimum of ten (10%) percent, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions shall bear interest at a maximum legal rate of interest per annum from the due date until they are paid.

Further, in the event the Trustees refer the account to legal counsel for collection, the delinquent Employer shall be liable for reasonable attorneys' fees, and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc.

Reasonable attorneys' fees shall mean: All reasonable attorneys' fees in the amounts for which the Trustees become legally bound to pay, including recovery of liquidated damages, interests, audit costs, filing fees, and any other expenses incurred by the Trustees.

The Trustees of the aforementioned Welfare and Pension Funds and the Union shall have the authority to audit the books and records of a participating Employer, either directly or through their authorized representative, whenever such examination is deemed necessary for the purpose of compliance with the provisions of this Agreement, including the obligation to remit Union Dues under Article 3.

Each participating Employer shall make its books and records available to the Trustees for such purpose. In the event the audit discloses that the Employer, during the period of the audit, has underpaid its contributions and/or wages, the Employer shall be liable for the costs of the examination, including but not limited to, audit fees and reasonable attorneys' fees. The Trustees' authority to waive any costs shall be governed by the terms of the Trust Agreement.

12

**Paragraph 4.** Appointment of Trustees to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund. The parties agree that the Employer-appointed trustees of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund and training and apprentice funds to which Employers are required to contribute shall be appointed solely by Employer associations that enter into collective bargaining agreements with the Union requiring contributions to such funds ("Signatory Associations"). It is further agreed that the Trust Agreements establishing such funds shall be amended to replace any Employer association that appoints a trustee and does not have a labor agreement with the Union, replacing it with a Signatory Association. The Union and Signatory Associations shall meet within 30 days of the effective dates of agreements covering a majority of Fund participants to review the appointment of Employer Trustees of the funds. It is agreed that the numbers of hours contributed by Employers represented by Signatory Associations compared to contributions by other Signatory Associations during the preceding year shall be the basis for assigning the number of trustee appointments. If such parties are unable to agree on the Signatory Associations to be responsible for appointments and the number of appointments to be made by each Signatory Association the dispute shall be submitted to expedited arbitration under Subpart D of the Policies and Procedures of the Federal Mediation and Conciliation Service.

**Paragraph 5.** Article III Section 2 of the trust agreements of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund shall be amended to include the following: "Association-appointed Trustees must be full-time employees of Contributing Employers within the Association's membership. A Contributing Employer shall be defined as an

13

Employer that has employed an average of five (5) or more Laborers performing bargaining unit work for whom contributions have been made per month in each of the previous three (3) calendar years."

**Paragraph 6. Section 415 Excess Benefit Fund**: A Section 415 Excess Benefit Fund shall be established for the purpose of providing alternative benefit to any employees of the Employer who become unable to receive the entire amount of the accrued pension benefits to which they would be entitled under one or more of the pension plans sponsored by their Employer because of limitations established by Section 415 of the Internal Revenue Code. The Employer may be required and directed by the Board of Trustees of the Excess Benefit Fund to contribute a portion of its agreed-upon "pension" contribution to the Section 415 Excess Benefit Fund and shall not increase the Employer's cost beyond the amount that the Employer is obligated to contribute to the Laborers' Pension Fund and that the funding of the Section 415 Excess Benefit Fund shall be fully tax deductible to the Employer for Federal Income Tax purposes. The Employer hereby agrees that the Board of Trustees of any such Section 415 Excess Benefit Fund shall be authorized to determine each year the amount that will be contributed by the Employer and the amount to be credited to the account of any eligible retiree for payment in lieu of accrued benefits that would exceed the limits set by Section 415 of the Internal Revenue Code.

**Paragraph 7.** The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Vacation Fund, a jointly-trusteed vacation plan established for the purpose of providing income to members during their winter layoffs. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

**Paragraph 8.** The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Annuity Fund, a jointly-trusteed defined contribution plan providing a supplemental retirement benefit. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

**Paragraph 9. SUPERVISORS:** To the extent permissible by the Internal Revenue Service or any Federal Act, and for the purposes of Paragraphs 2 and 3 of this Article for this Agreement only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor Management Relations Act, as amended; and who at one time were Employee members of the bargaining unit herein on whose behalf contributions were required to be made to the trust funds described in the aforesaid Paragraph 2 and 3 of this Article.

**Paragraph 10. Special Rules for Bonding.** An employer that is owned or managed, in whole or part, by an individual who currently has or previously had in the last ten (10) years ownership or principal managerial responsibility for another contributing employer that currently is or ceased doing business when delinquent to the Funds shall be required to post for the benefit of the Funds an additional cash bond or obtain a surety bond from a Fund-approved insurer in an amount equal to twice the amount of the other contributing employer's delinquency. This amount may be adjusted by the Benefit Fund Trustees for each individual employer. This bond shall be in addition to and separate from the bond required elsewhere in this Agreement.

### Article 6
### BONDING

**Paragraph 1.** All Employers shall procure, carry and maintain a surety bond in form and amount satisfactory to the Union, but not less than in the principal sum of $5,000.00, to guarantee payment of wages, Pension and Welfare Trust contributions, during the term of this

14

15

Agreement. The bond shall be placed in the custody of the Pension and Welfare Funds.

**Paragraph 2.** If the Employer employs between seven (7) and ten (10) Laborers, the surety bond shall be increased to $15,000. If the Employer employs between eleven (11) and twenty (20) Laborers, the surety bond shall be increased to $25,000. If the Employer employs twenty-one (21) to forty (40) Laborers, the surety bond shall be increased to $35,000. If the Employer employs forty-one (41) or more Laborers, the surety bond shall be increased to $45,000.

**Paragraph 3.** Contractors shall be required to obtain an appropriate bond within thirty (30) days of executing this Agreement, which bond may also be posted in cash. Should the Employer fail to comply with the provisions of Paragraphs 1-3 of this Article, the Union may withdraw its employees or strike until such compliance occurs, and the Employer shall further be liable for all costs, including attorneys fees, incurred in enforcing these provisions.

**Paragraph 4.** The Employer shall give notice to the Union and the appropriate Fund Office in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:

(a) Formation of Partnerships;
(b) Termination of business;
(c) Change of name commonly used in business operation;
(d) Change in form of business organization;
(e) Incorporation of business;
(f) Dissolution of corporation;
(g) Name and business organization of successor; and
(h) Admission to or withdrawal from any association operating as a multi-employer bargaining unit.

16

## Article 7
## INDUSTRY FUND

**Paragraph 1.** Each Employer shall pay into an industry advancement fund the amount of eight cents ($.08) for each hour worked for the Employer by those of his Employees covered by this Agreement. This payment shall be collected for and remitted only to funds as provided under written agreements between an employer association and the Union.

Each Employer shall pay into the Chicago-Area Laborers-Employers Cooperation and Education Trust ("LECET"), the amount of five cents ($.05) for each hour worked for the Employer by those of his Employees covered by this Agreement, or such additional amounts as the Union may in its sole discretion allocate from the annual total economic increase.

Each Employer shall pay into the Laborers' District Council Labor Management Cooperation Committee ("LDC/LMCC"), the amount of twelve cents ($.12) for each hour worked for the Employer by those of his Employees covered by this Agreement, or such additional amounts as the Union may in its sole discretion allocate from the annual total economic increase.

**Paragraph 2.** The Employer agrees to be bound by the Agreement and Declaration of Trust establishing the Industry Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of said Industry Fund pursuant to said Agreement and Declaration of Trust and amendments thereto. The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the LECET and LDC/LMCC, as well as any amendments thereto.

**Paragraph 3.** Inasmuch as the existence and utilization of this Industry Fund should result in increased construction and, therefore, in increased construction job opportunities for Employees, the Union agrees to cooperate in assuring that the contributions required by this

17

Article are in fact made by Employers bound by this Agreement.

## Article 8
## PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS

**Paragraph 1.** Except as provided under paragraph 2 below, wages must be paid by payroll check and shall include a stub or statement showing the number of straight time and overtime hours worked and rate of pay. Failure on the part of the Employer to have sufficient funds at the bank to meet pay checks issued workers, shall deprive such Employers henceforth from the right to pay by checks and Joint Grievance Committee shall assess such Employer a sum equal to not less than the expense incurred in the collection of the amounts due because of such insufficient funds to meet checks so issued.

**Paragraph 2. Direct Deposit:** In lieu of paying wages by payroll check, the Employer may make payment by electronic bank draft if the employee voluntarily accepts such alternate method of payment. The Employer shall not mandate electronic banking as a condition of employment. Electronic wage payments must be transferred to the employee's bank account no later than the employee's regular pay day and at no cost to the employee. If payment is made by electronic bank draft, the Employee must also be provided a record of hours worked, rates of pay, and deductions made, at the same time and containing the same information as if wages were paid by payroll check.

If full wages are not timely transferred to the employee's account, the Employer shall pay the employee an additional four (4) hours pay for each day or portion thereof until full wages are received. Employers who vio-

18

late the provisions of these paragraphs shall be denied the use of electronic banking for wage payments.

**Paragraph 3.** The Union agrees that the Employees whom it represents will accept and demand the wages and fringe benefit payments set forth in this Agreement, and the employer agrees to pay the wages and fringe benefit payments herein stipulated.

**Claims for Shortages:** Claims by Employees for shortages must be made within three (3) weeks after shortage is discovered.

**Paragraph 4.** Payment by the Employer and acceptance by the Employee of less than the wage herein stipulated shall be a violation of this Agreement upon the part of each. Upon conclusive proof to the Joint Grievance Committee of such violation, the Employer shall immediately pay the unpaid balance due in accordance with the wage herein stipulated; and in addition thereto, shall pay the Joint Grievance Committee an amount equal to the penalties provided in the appropriate Article of General Conditions of this Agreement, but under no circumstances shall such penalties be less than fifty (50) percent of the amount of such pay shortage as just and liquidated damages because of such violation.

Upon conclusive proof that the Employer is guilty of paying less than the wages herein stipulated, then nothing in this Agreement shall be construed to take from the Union the right to remove workers it represents from the job, and henceforth to deny such Employer further right to the employment of its members.

Members of the Union who are found guilty of violation of this Agreement shall be dealt with by the Employer.

**Paragraph 5.** The Union reserves and shall have the right to remove its employees from any job upon the failure of the Employer to pay the wages due any of its Employees or fringe benefits which may be due by reason of the hours of employment.

19

Paragraph 6. The Employer hereby agrees to maintain proper temporary toilet and drinking facilities accessible to all Employees on the job. The Employer shall furnish a suitable place, properly heated when reasonably necessary, where Laborers may eat and change their clothes.

Paragraph 7. Where services are performed by Laborers as watchmen, and such Laborers shall not be engaged in the performance of any other branches of work covered by this Agreement, they shall be paid not less than $1.50 below the Building Laborers' rate.

Paragraph 8. HIRING HALL: No agreement on the request of the Union for the establishment of an exclusive Hiring Hall has been consummated. Therefore, the question of establishing a Hiring Hall is hereby reserved for the future consideration of the parties. Upon service of sixty (60) days' notice in writing upon Employer from Union, such question shall be taken up for discussion and further negotiation by the parties hereto.

Paragraph 9. Foremen. There shall be a Laborer appointed as Labor Foreman when five (5) or more Laborers are employed on any one job or project; there shall be sub-foreman after the first ten (10) Laborers, and for each multiple of five (5) Laborers employed thereafter to properly supervise the various phases of the work. A Sub-Foreman shall receive $.45 premium wages above the regular wages paid those Laborers under his supervision, plus established overtime rates. When a Labor Foreman is needed to supervise Laborers such Labor Foreman shall receive $.75 or more premium wages above top labor scale, as mutually agreed between said Labor Foreman and his Employer.

The above and foregoing shall not be so construed as to restrict the Employer's right to pay higher premium wages or appoint a greater percentage of foremen and/or sub-foremen.

20

Paragraph 10. The Employer shall not engage his labor on a piece-work basis.

Paragraph 11. The Employer shall furnish all tools and shovels required for the work, also boots and rain equipment required for the protection of the workers in the trade and the worker shall be held responsible for them.

Paragraph 12. The Employer shall furnish any necessary protective medication, such as petroleum jelly, to prevent burns from creosote or chemicals which may prove injurious to the skin.

Paragraph 13. On a job site requiring a Tool Shanty, said Tool Shanty shall be tended by a Laborer if Employer determines tending is required.

Paragraph 14. Portable Water Pumps shall be tended by Laborers if Employer determines tending is required.

Paragraph 15. In any instance where a Machine replaces only the work of Laborers, said Machine shall be operated by a Laborer if so determined by the Employer.

Paragraph 16. The Employer shall furnish a suitable place, properly heated when reasonably necessary, where Laborers may eat and change their clothes.

Paragraph 17. The Employer shall not discriminate against any Employee who may be an officer, steward or member of the Union serving on any committee authorized by the Union.

Paragraph 18. PRE-JOB CONFERENCES. If the Union elects, a pre-job conference prior to commencement of work shall be held or if need is for additional men after the job has started, then the conference shall be held before the additional hiring commences if the Union elects. At the pre-job conference, the Employer shall advise the Union of its requirements as to workmen required in the respective classifications, the probably starting date, duration of the job, subcontractors, and working schedules.

21

Paragraph 19. **Out of Town Work.** When Laborers who reside or work in the nine-county geographic area covered by this Agreement are asked to work at locations outside these nine counties, the Employer shall continue to report and pay benefits for all hours worked outside the nine counties. If the work performed is covered under a labor agreement with the Laborers' International Union of North America or its affiliates, the Employer shall report and pay the benefit contributions to the fringe benefit fund identified, and the contribution rates specified, under that labor agreement. If the work performed is not covered under a labor agreement with the Laborers' International Union of North America or its affiliates, then the Employer shall report and pay the benefit contributions to the fringe benefit funds identified, and the contributions rates specified, under this Agreement.

## Article 9
## STEWARDS

Paragraph 1. The parties agree that the following basic principles apply to the selection of a Job Steward:

(1) The Union requires that a Steward must fully protect the interest of the Union.

(2) The Employer requires that the Steward be a Laborer who can efficiently perform his duties as a Laborer and will not disrupt the job unnecessarily in discharging his duties as a steward.

(3) To meet the two basic principles agreed to by the parties, it is further agreed:

(a) The Job Steward shall be a working Laborer;

(b) The Steward shall be selected by the Business Manager of the Union with jurisdiction over the job;

(c) In selecting a Steward preference shall be given to Union members presently employed in the bargaining unit of the Employer on the specific site, provided, however, that if, in the judgment of the Business Manager, no

presently employed Union member is competent to act as Steward, the Steward shall be selected from outside the bargaining unit. A reason shall be given by the Business Manager why no member is competent. However, the reason shall not infringe upon the right of the Business Representative to select the Steward; and

(d) The Union shall have the right to replace any steward at any time.

Paragraph 2. The Steward shall be subject to the same terms of employment as any other Employee, but taking into consideration that the Steward should be present during all working hours, all possible overtime work shall be assigned to all Stewards, if the Stewards do not replace another Laborer from that other Laborers' previously assigned duties.

Paragraph 3. The duties of the Steward shall include the checking of terms and conditions of work, safety conditions, starting dates of employment for new Laborers, whether Union or Non-Union, and report same to the Business Representative who appointed him. All Laborers employed on a job or project shall report to the Steward any differences or disputes which may arise in connection with the work or any part of it, and the Steward shall report same to the office of the Union. If it becomes necessary to discharge or lay off any Laborers because of completion of the work or otherwise, the Laborer appointed and acting as Steward shall not be discharged or laid off while other Laborers remain employed on the job or project as long as he is competent to perform the work. Nothing herein contained shall in any way restrict the right of any Employer to discharge a Steward for cause, upon notification to the Business Manager of the Local Union who appointed the Laborer to act as Steward.

Paragraph 4. Whenever one or more Laborers are required to work overtime, one of these Laborers shall be the regular designated Steward if he is competent to do the work required or if he cannot work, he will call the

Business Manager; and the Business Manager will designate someone on this job to act as Steward.

## Article 10
## TRAINING AND APPRENTICE PROGRAM

**Paragraph 1. APPRENTICE COMMITTEE:** The Employer hereby adopts and shall be bound by the agreement and declaration of trust established by the Joint Apprenticeship Training Committee ("JATC") for the apprentice program, together with any amendments thereto, which are incorporated by reference herein. The JATC shall have authority to set and enforce penalties for violations of the apprenticeship rules.

**Paragraph 2. TRAINING FUND:** The Employer shall contribute twelve cents ($.12) per hour for each hour worked from June 1, 2006 to May 31, 2007 for all Employees covered under this Agreement to the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund payable to the Training Fund or a designated appointee at the end of each month and such additional sums as the Union may designate in its sole discretion from its total economic package on June 1, 2006, 2007, 2008 and 2009 under this Agreement. The terms of the trust establishing the Fund are incorporated by reference herein and all terms regarding auditing, assessment, non-payments and grace periods as set out in the Collective Bargaining Agreement regarding payment of Welfare and Pension Fund contributions shall apply as if fully set forth herein for the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund.

**Paragraph 3. APPRENTICE PROGRAM FUNDING:** The apprenticeship program administered by the JATC shall be self sustaining. In addition to the sums set forth above in Paragraph 2, effective June 1, 2006 the Employer shall also contribute to the Training Fund an additional contribution of five cents ($.05) per hour for each hour worked by all employees covered by this agree-

24

ment to the Training Fund or to a designated appointee at the end of each month, and such additional sums as the Union may designate in its sole discretion from the total economic package on June 1, 2006, 2007, 2008 and 2009 under this Agreement.

**Paragraph 4.** The term of apprenticeship shall be 2,400 hours, or two years, whichever occurs later, or such other duration as is mutually agreed by the Training and Apprenticeship Fund trustees. All Health and Welfare, Pension, Training Fund, Industry Advancement and other contributions required under this Agreement will commence immediately upon employment of an apprentice. Union affiliation will be required after seven (7) days of employment.

**Paragraph 5.** The wages per hour paid to apprentices shall be as follows:

| | |
|---|---|
| 1st six (6) months: | 60% of journeyman (base) wages |
| 2nd six (6) months: | 70% of journeyman (base) wages |
| 3rd six (6) months: | 80% of journeyman (base) wages |
| 4th six (6) months: | 90% of journeyman (base) wages |
| After twenty-four (24) months: | 100% of journeyman (base) wages |

**Paragraph 6.** The ratio of journeymen to Apprentices shall be six (6) Laborer journeymen to one (1) Laborer apprentice on a company-wide basis, with no more than twenty percent (20%) of Laborers being apprentices on any one job site of the Employer. Employers who employ a maximum of between one (1) and five (5) Laborer journeymen shall be entitled to one (1) Laborer apprentice, who may be assigned to job sites irrespective of the twenty percent (20%) job site maximum specified in this provision.

**Paragraph 7.** Referral of apprentices will be through the Local Union with jurisdiction over the job site. Employers requesting apprentices will be assigned an apprentice by the JATC from the available apprentice

25