# RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

Restated through
July 1, 2003



EXHIBIT
D~5

TABLE OF CONTENTS

ARTICLE _____ PAGE

I - Certain Definitions ...........................................................................
   Section 1 - Welfare Fund .........................................................
   Section 2 - Employer ..............................................................
   Section 3 - Employee ..............................................................
   Section 4 - Trustees.................................................................
   Section 5 - Contributions .........................................................
   Section 6 - Benefits..................................................................
   Section 7 - Written Agreement ..................................................
   Section 8 - ERISA....................................................................
   Section 9 - Collective Bargaining Agreement or Participation Agreement ....................
   Section 10 - Covered Employment ............................................
   Section 11 - Participant...........................................................
   Section 12 - Trust Agreement ..................................................
   Section 13 - Trustees...............................................................
   Section 14 - Council and Union.................................................

II - General Purposes of Welfare Fund ...................................................

III - Operation and Administration of Welfare Fund ...............................
   Section 1 - The Board of Trustees ...........................................
   Section 2 - Employer Trustees.................................................
   Section 3 - Union Trustees.......................................................
   Section 4 - Acceptance of Trusteeship.......................................
   Section 5 - Jointly Appointed Arbitrator ...................................
   Section 6 - Term of Trustees.....................................................
   Section 7 - Additional Trustees ................................................

IV - Relating to the Trustees.................................................................
   Section 1 - General Powers.......................................................
   Section 2 - Appointment of Investment Managers .....................
   Section 3 - Duty of Trustee Re: Assets Managed by Investment Manager.....................
   Section 4 - Allocation of Trustee Responsibilities .....................
   Section 5 - Insurance................................................................
   Section 6 - Compensation and Expenses ...................................

V - Manner of Acting by Trustees .........................................................
   Section 1 - In General ..............................................................
   Section 2 - Record of Trustees Actions .....................................
   Section 3 - Administrative Personnel ........................................
   Section 4 - Disbursement of Welfare Fund.................................
   Section 5 - Execution of Notices and Documents .......................

VI - Employer Contributions ...................................................................................
      Section 1 - In General ...................................................................................
      Section 2 - Default in Payment of Contributions.............................................
      Section 3 - Report on Contributions and Production of Records ..................

VII - Filing Claims and Review of Denial of Claim ................................................
      Section 1 - Filing of a Claim..........................................................................
      Section 2 - Adjudication of Claims and Appeals.............................................

VIII - Duty to Cooperate ..........................................................................................

IX - Miscellaneous Provisions ..................................................................................
      Section 1 - Vested Rights...............................................................................
      Section 2 - Encumbrance of Benefits..............................................................
      Section 3 - Payments to Persons Under Legal Disability.................................
      Section 4 - Situs ............................................................................................
      Section 5 - Construction of Terms .................................................................
      Section 6 - Notification of Trustees ...............................................................
      Section 7 - Severability.................................................................................
      Section 8 - Counterparts................................................................................

X - Change of Trustee................................................................................................
      Section 1 - Resignation .................................................................................
      Section 2 - Removal of Trustee and Appointment of Successor Trustee ........

XI - Amendment and Termination...............................................................................
      Section 1 - Amendment .................................................................................
      Section 2 - Termination .................................................................................
      Section 3 - Notification of Termination..........................................................

## RESTATED AGREEMENT AND
## DECLARATION OF TRUST OF
## THE HEALTH AND WELFARE DEPARTMENT
## OF THE
## CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL
## OF
## CHICAGO AND VICINITY

THE AGREEMENT AND DECLARATION OF TRUST creating Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, also known as the "Laborers' Welfare Fund" ("Welfare Fund"), originally made and entered into the 1st day of June, 1950, was amended from time to time thereafter and is hereby further amended and restated, effective as of July 1, 2003, by substituting for it this Restated Agreement and Declaration of Trust between CONSTRUCTION GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, A.F.L.-C.I.O., (the "Council") representing its affiliated local unions (the "Unions") and the members thereof (collectively "the Union") and BUILDERS' ASSOCIATION OF GREATER CHICAGO, UNDERGROUND CONTRACTORS ASSOCIATION, MASON CONTRACTORS' ASSOCIATION OF COOK COUNTY, ILLINOIS ROAD AND TRANSPORTATION BUILDERS' ASSOCIATION, CONCRETE CONTRACTORS' ASSOCIATION OF GREATER CHICAGO, EMPLOYING PLASTERERS' ASSOCIATION OF GREATER CHICAGO, and LAKE COUNTY CONTRACTORS ASSOCIATION and all other employer associations (the "Associations") who were parties to collective bargaining agreements with the Union, with representatives of this Trust, for and on behalf of themselves and their respective members and other employers in the building and construction trades and related industries who are included in the term "Employers" (as defined in Section 2 of ARTICLE I of this Agreement) and agreed to be bound by this Agreement or who are otherwise so bound as provided as set forth in Section 2 of ARTICLE I of this Agreement;

WHEREAS, the Trust Agreement has been amended from time to time and the Board of Trustees has agreed to restate the Trust Agreement with amendments adopted through April 1, 2003;

NOW, THEREFORE, pursuant to their authority under Article XI, the Board of Trustees hereby amends and restates the Trust Agreement to read as follows:

## ARTICLE I
## CERTAIN DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement.

Section 1.  WELFARE FUND.  The term "Welfare Fund" means the trust fund, previously established and administered under the terms of this Agreement and includes all property of every kind held by the Trustees hereunder.  The assets of the Welfare Fund are to be

4

used for the purposes generally described in Section 302(c) of the Labor Management Relations Act of 1947, as amended by the applicable provisions of ERISA (as defined in Section 8 next below).

        <u>Section 2. EMPLOYER.</u> The term "Employer" as used herein shall mean any Employer who:

(a)    Now or hereafter is a party to a Collective Bargaining Agreement with the Union, requiring periodic contributions to the Welfare Fund or who in the past has been a party to such a Collective Bargaining Agreement, if such agreement has not been terminated by its terms or by operation of law;

(b)    Is a party to any memorandum of understanding or memorandum of agreement or similar instrument with the Unions, which by its terms incorporates by reference a complete Collective Bargaining Agreement which requires the parties thereto to make contributions to the Welfare Fund;

(c)    In writing adopts and agrees to be bound by the terms and provisions of this Agreement as the same may be amended or modified from time to time;

(d)    Is a party to any written instrument which evidences an agreement to be bound by the provisions of this Agreement, including but not limited to, a contribution report form listing the employees on whose behalf contributions are remitted and provisions expressly binding such Employer to the Agreement or otherwise evidencing such Employer's intention to be so bound by the making of such contributions;

(e)    By any course of conduct, including but not limited to, oral representations to Employees, representatives of the Union, Trustees, attorneys or other persons, ratifies or accepts the provisions of any Collective Bargaining Agreement which requires contributions to the Welfare Fund continued hereby or of this Agreement itself, or of any other written instrument which binds such Employer to make contributions to the Welfare Fund, and by which the Employer is estopped to deny such obligation;

(f)    Is a member of any of the associations named in Article III ("Association"), or hereafter becomes a member of any of the Associations, named herein or who was a member at any time when representatives of said Associations commenced negotiations of a Collective Bargaining Agreement on behalf of its members whether or not said membership is held current at all times; or

(g)    Is a member of any other multi-employer bargaining units, or hereafter becomes a member of any of said multi-employer bargaining units, which has a Collective Bargaining Agreement with the Council or Unions.

        The term "Employer," shall also mean the Union, for the purpose of providing benefits hereunder for the eligible Employees of the Council and Unions for whom the Council or Unions contribute to the Welfare Fund.

        The term "Employer" shall also mean the Board of Trustees of this Fund and the boards of trustees of other funds sponsored by the Union, namely, the Laborers' Pension Fund; the Chicagoland Laborers' Training and Apprentice Fund, Laborers-Employers Cooperative

Education and Trust; and Laborers' District Council Laborers-Management Cooperation Committee for the purpose of providing benefits for the eligible employees of such funds for whom contributions are made to the Welfare Fund.

The term "Employer" shall also mean, for the purpose of providing benefits hereunder for its eligible Employees, an Association which is party to a Collective Bargaining Agreement with the Union whereunder it is agreed that the Employer members of such Association shall make Employer contributions to the Welfare Fund.  An Association shall be permitted to contribute provided that the Trustees approve such participation, the Association and Trustees sign a Participation Agreement and the Association makes timely contributions on behalf of all eligible employees.

A person or entity that has become an Employer under this Agreement pursuant to a Collective Bargaining Agreement or other written agreement with the Union shall continue as such until it is no longer obligated pursuant to such Written Agreement (as defined in Section 7 next below) or by the National Labor Relations Act or other legally enforceable obligation to make contributions to the Welfare Fund.

Section 3.  EMPLOYEE.  The term "Employee," as used herein, shall mean any of the following persons without regard to race, color, creed, national origin, religion or union membership.

(a)     Any person covered by a Collective Bargaining Agreement between an Employer and the Union who is engaged in employment with respect to which the Employer is obligated by the Collective Bargaining Agreement to make contributions to the Welfare Fund;

(b)     Any person employed by an Employer who performs work within the jurisdiction of the Council as said jurisdiction is set forth in any applicable Collective Bargaining Agreement or by any custom or practice in the geographic area within which the Employer operates and his Employees perform work;

(c)     Any person on whose behalf an Employer has made contributions to the Welfare Fund and has reported same on a standard report form which contains a provision binding said Employer to the provisions of this Agreement or otherwise evidencing said Employer's intent to be so bound.

(d)     Any person employed by an Employer who has signed any memorandum of understanding incorporating by reference the provisions of any applicable Collective Bargaining Agreement or the provisions of this Agreement where such person is covered by an agreement which incorporates this Agreement by reference or both;

(e)     Any person who is not covered by a Collective Bargaining Agreement but on whose behalf his Employer is otherwise obligated to make contributions to the Welfare Fund in accordance with the provisions of this Agreement who performs work which would be work performed by members of a bargaining unit recognized by the Employer or certified by the National Labor Relations Board if said person's Employer were a party to any of the standard Collective Bargaining Agreements by and between the Union and any of the aforementioned

Associations; or

(f)    Any Employee in a certified or recognized collective bargaining unit represented by the Union.

The term "Employee" shall also mean all eligible persons employed by the Union, on whose behalf the Union shall make payments to the Welfare Fund at the times and at the rate of payment equal to that made by any other Employer who is a party to this Agreement.

The term "Employee" shall also mean all eligible persons employed by the Trust or a fund sponsored by the Union, with the approval of the Trustees in either case, on whose behalf the Board of Trustees or trustees of said fund shall make payments to the Welfare Fund, at the times and at the rate of payment not less than that made by any other Employer who is a party to this Agreement.

The term "Employee" shall also mean all eligible persons employed by an Association of Employers on whose behalf the Association shall make payments to the Welfare Fund at the times and at the rate of payment not less than that made by any other Employer which is a party to this Agreement.

Section 4. TRUSTEES. Subject to the provisions of this Agreement, the term "Trustees" shall include the Union Trustees, the Employer Trustees and their successors designated and appointed in accordance with the terms of this Agreement who shall, collectively, serve as the members of the "Board of Trustees" (as described in ARTICLE III) hereunder.

Section 5. CONTRIBUTIONS. The term "Contributions" shall mean the monies paid to the Welfare Fund by Employers on behalf of Employees pursuant to applicable Written Agreements or as otherwise required hereby, which shall be held by the Trustees for the purposes set forth herein.

Section 6. BENEFITS. The term "Benefits" shall mean payments, whether from the principal or income, or both, of the Welfare Fund for the benefit of Employees, their families and dependents, such as medical, surgical, hospital care, dental, vision, prescription drug, life, sickness and disability benefits.

Section 7. WRITTEN AGREEMENT. The term "Written Agreement" shall mean any agreement in writing which specifies the detailed basis on which contributions shall be made to the Welfare Fund together with any modification, amendment or renewals thereof, including but not limited to Collective Bargaining Agreements, Participation Agreements, memoranda of understanding which incorporate by reference Collective Bargaining Agreements or this Agreement, report forms in accordance with which contributions are made and which obligate the Employer to the provisions of this Agreement, or any other agreement obligating the Employer signatory thereto to participate in or be bound by this Agreement.

Section 8. ERISA. The term "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time.

Section 9.   COLLECTIVE BARGAINING AGREEMENT OR PARTICIPATION AGREEMENT.   "Collective Bargaining Agreement" or "Participation Agreement" means a written agreement between the Union and an Employer or an Association of Employers or a Participation Agreement between the Board of Trustees and an Employer, which requires contributions to the Welfare Fund.

Section 10.   COVERED EMPLOYMENT.   "Covered Employment" means employment for which an Employer is obligated to contribute to the Welfare Fund.

Section 11.   PARTICIPANT.   "Participant" means an Employee who meets the requirements for participation in the Plan or a former Employee, Spouse or Dependent who is eligible for Benefits.

Section 12.   TRUST AGREEMENT.   "Trust Agreement" means this Restated Agreement and Declaration of Trust establishing the Laborers' Welfare Fund.

Section 13.   TRUSTEES.   "Trustees" means the Board of Trustees as established and constituted in accordance with this Trust Agreement.

Section 14.   COUNCIL AND UNION.   "Council" means the Construction and General Laborers' District Council of Chicago and Vicinity and "Union" means, collectively the Council and all of the local unions now or hereafter affiliated therewith.


## ARTICLE II
## GENERAL PURPOSES OF WELFARE FUND

The Welfare Fund shall be used for the exclusive purposes of:
(a)  Providing welfare benefits to eligible Employees and their families and dependents, which benefits, to the extent possible shall include:
1.  medical, surgical and hospital care;
2.  death benefit payments;
3.  dental, vision and prescription drug benefits; and
4.  disability, accident and sickness benefits; and
(b)  For defraying reasonable expenses of administering and operating the welfare benefit program.

Provisions for rendering such benefits described in (a) next above and other related welfare purposes shall be made from time to time by the Trustees, either on an insured or self-insured basis, and such payments and provisions, limitations and conditions for benefits shall be scheduled and prescribed in writing as the Trustees shall determine from time to time. All benefit programs inaugurated by the Trustees shall be subject to the applicable limitations of law and shall not be inaugurated unless the Trustees have conducted a thorough investigation and have thereby determined that the proposed benefit program is actuarially sound and financially

and administratively practicable, and provided such benefit program requires adjustment of all claims, other than death benefits, through competent adjusters selected by the Administrator and Fund staff (as described in Article III of this Agreement).

## ARTICLE III
## OPERATION AND ADMINISTRATION OF WELFARE FUND

Section 1. THE BOARD OF TRUSTEES. Except as otherwise specifically provided, the Welfare Fund shall be operated and administered by a Board of Trustees whose membership shall consist of six persons appointed as Trustees by Associations (known as the "Employer Trustees") as provided in Section 2 next below and six persons appointed as Trustees by the Council (known as the "Union Trustees") as provided in Section 3 next below. The Employer Trustees and the Union Trustees may jointly appoint a person to act as a "Jointly Appointed Arbitrator," as provided in Section 5 next below.

Employer Trustees must be appointed from the ranks of contributing Employers within the Associations' membership.

Section 2. EMPLOYER TRUSTEES. The Employer Trustees shall be the following persons appointed by the entity indicated:
- (a) Charles Cohen, appointed by the Underground Contractors' Association;
- (b) Sam Vinci, appointed by the Mason Contractors Association of Greater Chicago;
- (c) Charles J. Gallagher and David Lorig, appointed by the Illinois Road and Transportation Builders Association;
- (d) Dennis Martin, appointed by the Concrete Contractors Association of Greater Chicago; and
- (e) Roger Vignocchi, appointed by the Lake County Contractors' Association.

Section 3. UNION TRUSTEES. The Union Trustees shall be James P. Connolly, Randy Dalton, Martin T. Flanagan, Liberato Naimoli, Scott Pavlis and Frank Riley.

Section 4. ACCEPTANCE OF TRUSTEESHIP. The Employer Trustees, the Union Trustees have accepted their trusteeship hereunder.

Section 5. JOINTLY APPOINTED ARBITRATOR. Pursuant to applicable statutes and pursuant to the terms of this Agreement, a deadlock on a motion may arise. In such event, the Motion may be withdrawn and no further action need be required to be taken. If said Motion is not withdrawn, and the deadlock remains, then in the case of a deadlock, the Trustees shall meet for the purpose of agreeing upon a Jointly Appointed Arbitrator to break such deadlock by deciding the dispute in question. In the event of the inability of the Trustees to agree upon the selection of such Jointly Appointed Arbitrator within a reasonable time, then, on the petition of either the Union Trustees or the Employer Trustees, the Federal District Court of the United States where the Fund maintains its principal office shall appoint an impartial Arbitrator. Such impartial Arbitrator shall immediately proceed to hear the dispute between the Trustees and

decide such dispute, and the decision and award of such Arbitrator shall be final and binding upon the parties. The reasonable compensation of such Arbitrator and the costs and expenses (including, without limitation, attorneys' and reporter fees) incidental to any proceedings instituted to break a deadlock shall be paid by the Trust Fund.

Section 6. TERM OF TRUSTEES AND JOINTLY APPOINTED ARBITRTOR. Subject to the provisions of Article XI of this Agreement, the term of the Jointly Appointed Arbitrator shall end upon resolving the deadlock. Each Union and Employer Trustee shall serve for a term of three (3) calendar years.

Section 7. ADDITIONAL TRUSTEES. The parties to this Agreement reserve the right to change the number of Trustees; provided, however, that there shall always be an equal number of Union Trustees and Employer Trustees.

## ARTICLE IV
## RELATING TO THE TRUSTEES

Section 1. GENERAL POWERS. The Trustees shall have the following powers, rights and duties in addition to those provided elsewhere in this Agreement or by law.

    (a)    To exercise full discretionary authority to construe the provisions of this Trust Agreement and any amendment to it. The Trustees have full discretionary authority to interpret the Welfare Benefit Plan, and Plan documents, rules, regulations, and procedures, including procedures for collection of Employer Contributions;

    (b)    To exercise full discretionary authority to formulate, promulgate, construe and apply the provisions of this Trust Agreement and any amendments and the Plan's rules and regulations. The Trustees have full discretionary authority to modify and interpret the Welfare Fund's documents, rules and procedures. Their interpretation will be given the maximum deference permitted by law for the exercise of such full discretionary authority, and it will be binding for all involved persons. The action adopted by the Trustees shall be binding upon the Union, any Association, all Employers, all Employees and all Participants and beneficiaries who may be covered under the Plan;

    (c)    To exercise full discretionary authority to enter into any and all contracts and agreements for carrying out the terms of this Agreement and for the administration of the Welfare Fund and to do all acts as they, in their discretion, may deem necessary and advisable;

    (d)    To exercise full discretionary authority to establish and accumulate as part of the Welfare Fund's assets a reserve or reserves adequate, in the opinion of the Trustees, to carry out the purposes of this Agreement;

    (e)    To pay out of the Welfare Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Welfare Fund or any money, property or securities forming a part thereof;

(f)    To receive contributions or payments from any source whatsoever to the extent permitted by law;

(g)    To exercise full discretionary authority to invest and reinvest the assets of the Welfare Fund in property of any kind, real or personal, including group contracts issued by any life insurance company authorized to do business in the State of Illinois, but, excluding, however, any securities issued by an Employer hereunder;

(h)    To exercise full discretionary authority to appoint a bank or banks or trust company or trust companies to be designated as corporate trustee or custodian, and to enter into and execute a trust agreement or trust agreements with such bank or banks or trust company or trust companies, to provide for the investment and reinvestment of assets of the Welfare Fund, with such other provisions incorporated therein as may be deemed desirable in the Trustees' sole discretion for the proper management of the Welfare Fund and upon such execution to convey and transfer to such corporate trustee or custodian all or any portion of the assets of the Welfare Fund;

(h)    To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or appropriate for the advantageous management, investment and distribution of the Welfare Fund and to carry out its purposes. The Trustees may delegate authority to an investment consultant, investment managers, corporate trustee or custodian to manage, invest and monitor the performance of managers and to take appropriate action concerning any such investments, including the voting of proxies on securities;

(i)    To cause the books and accounts of the Welfare Fund to be audited, at least annually, by a Certified Public Accountant, to furnish a copy of such audit to each Trustee and the Council, and to make a copy of any such audit available for inspection by authorized persons, during business hours, at the office of the Welfare Fund;

(k)    To enter into a reciprocal agreement with any other welfare fund relating to the contributions to be made by an Employer for any covered Employee during periods when such Employee is engaged in performing work in the geographical area in which such other welfare fund is operative and to provide for the transfer of contributions to reciprocal welfare funds on behalf of participants in such funds;

(l)    To exercise full discretionary authority to compromise, arbitrate, settle, adjust or release any suit or legal proceeding, claim, debt, damage action or undertaking due or owing from or to the Welfare Fund on such terms and conditions as the Trustees may deem advisable;

(m)    To appoint an "Administrator" who may be delegated all of the rights, duties and obligations of an "administrator" under the applicable provisions of ERISA;

(n)    To retain in cash (pending investment, reinvestment and payment of benefits) any portion of the Welfare Fund and to deposit cash in any banking institution as a depositary;

(o)    To establish and review periodically (but at least annually) a written funding policy for the investment of assets of the Welfare Fund and review an annual report concerning the Fund's liabilities and assets;

(p)     To keep a written account showing the net worth of the Welfare Fund, all investments, receipts, disbursements and other transactions made by the Trustees and any agents of the Trustees, which accounts will be audited annually as provided above. If, during the term of this Agreement, the Department of Labor issues regulations under ERISA regarding the valuation of securities or other assets for purposes of the reports required by ERISA, the Trustees shall use such valuation methods for purposes of the annual report described in this paragraph; and

(q)     To lease or purchase such premises, materials, supplies and equipment, and to employ legal counsel, investment counsel and accounting, actuarial, clerical or other agents or employees as the Trustees deem necessary or desirable.

Section 2.  APPOINTMENT OF INVESTMENT MANAGERS.  Notwithstanding any other provision of this Agreement, the Trustees may appoint an Investment Consultant to advise the Trustees on the allocation of investments, to assist in the selection of Investment Managers and custodians, to monitor the performance of Investment Managers and custodians, to vote proxies of the Trustees on securities and to represent the Trustees in such matters and one or more Investment Managers (as defined in Section 3(38) of ERISA) who shall have the power to manage, acquire, or dispose of specific portions of the Fund's assets as the Trustees shall determine and to act on behalf of the Trustees with respect thereto, subject to the following:

(a)     Any direction given to the Trustees by an Investment Manager shall be given in writing or given orally and confirmed in writing as soon thereafter as is practicable; and

(b)     The indicia of ownership of the assets of the Welfare Fund shall be held by the Trustees (or a custodian appointed by them) at all times.

Section 3.  DUTY OF TRUSTEES RE: ASSETS MANAGED BY INVESTMENT MANAGERS.  Notwithstanding any other provision of this Agreement, the Trustees shall adopt an investment policy, which shall be provided to an Investment Manager and, with respect to the assets of the Welfare Fund that an Investment Manager has been appointed to manage, the Trustees shall follow the direction of the Investment Manager and shall not be liable to anyone:

(a)     For any act or omission of the Investment Manager with respect to such assets;

(b)     For failing to act with respect to such assets absent direction from the Investment Manager; or

(c)     For failing to review the day to day actions of the Investment Managers as to such assets.

Section 4.  ALLOCATION OF TRUSTEE RESPONSIBILITIES.  The Trustees are specifically authorized to allocate among themselves any and all of the responsibilities, obligations and duties imposed on them by this Agreement, in which event, to the extent permitted by law, a Trustee to whom certain responsibilities, obligations or duties have not been allocated shall not be liable either individually or as a Trustee for any loss resulting to the Welfare Fund arising from the acts or omissions on the part of another Trustee to whom such responsibilities, obligations or duties have been allocated.

Section 5.  INSURANCE.  The Trustees are specifically authorized to purchase insurance for themselves and any other fiduciary through the Agreement to indemnify the insured against liability or losses occurring by reason of any act or omission of the insured, provided, however, that any contract providing such insurance must contain provisions permitting recourse by the insurer against the insured.

Section 6.  COMPENSATION AND EXPENSES.  The Trustees shall not receive any compensation from the Welfare Fund for services rendered hereunder, but shall be reimbursed for reasonable expenses actually and properly incurred in connection with the performance of their responsibilities.  The Trustees are authorized to pay from the Welfare Fund all of the Trustees' reasonable expenses, taxes and charges (including fees of persons employed by them in accordance with Section 1, paragraph (o) of this Article) incurred in connection with the collection, administration, management, investment, distribution and protection of the Welfare Fund, including without limitation, attendance at meetings and other functions of the Board of Trustees or its committees or while on business of the Board of Trustees, attendance at institutes and educational conferences, seminars or workshops for or on behalf of the Fund.

## ARTICLE V
## MANNER OF ACTING BY TRUSTEES

Section 1.  IN GENERAL.  The Trustees shall act by a majority of the Trustees by meeting, or by unanimous written consent of the Trustees without meeting, subject to the following:

    (a)    Meetings of the Trustees shall be held at such times and place as is agreed by the Trustees and may be called on five (5) days' advance written notice by a majority of the Trustees or at any time, without notice, by the unanimous written consent of the Trustees.  The Trustees may agree on the use of conference calls to conduct meetings and telefacsimiles and e-mail to give notice of consent to any action proposed to be taken by the Trustees or Administrator;

    (b)    Two Employer Trustees and two Union Trustees shall constitute a quorum for any meeting of the Trustees;

    (c)    Each Employer Trustee and Union Trustee, shall have one (1) vote on any matter brought before a meeting and, in his absence, such vote may be cast by another Trustee appointed by the Employers or the Union, as the case may be;

    (d)    If a vacancy in the Board of Trustees exists, the remaining Trustees shall have the same powers as the full Board of Trustees until the vacancy is filled, subject to the following:

        (i)    If there is a vacancy in the number of Union Trustees, then, with respect to any matter coming before the Board of Trustees, one Union Trustee (selected by the Union Trustees then acting) shall cast an additional vote for each existing vacancy in the number of Union Trustees.

        (ii)    If there is a vacancy in the number of Employer Trustees, then, with respect to any matter coming before the Board of Trustees, one Employer Trustee (selected by the Employer Trustees then acting) shall cast an additional vote

for each existing vacancy in the number of Employer Trustees.

(e) It is the intention of the parties to this Agreement that any matter or action coming before the Board of Trustees be subject to the action of an equal number (actual or weighted) of Union Trustees and Employer Trustees;

(f) If a Trustee is absent from a meeting of the Board of Trustees, he may, but need not, cast a vote on any matter by written instrument filed with or telegram addressed to the Board of Trustees; and

(g) If a Trustee is absent from any meeting, then, to the extent permitted by law, he shall not be liable for any matter considered at that meeting on which he has not case a vote as provided by the foregoing sentence.

The certificate of one Employer Trustee and one Union Trustee or of the Administrator that the Board of Trustees has taken or authorized any action shall be conclusive in favor of any person relying on the certificate.

Section 2.  RECORD OF TRUSTEES ACTIONS.  The Trustees may select a Secretary to serve for a term of three (3) calendar years or until a successor has been duly elected.  The Administrator, or in his absence a person appointed by the Trustees, shall prepare a draft of the minutes of each meeting and provide a copy to the Trustees as soon as practicable after the meeting is held.  The Trustees will review and approve the minutes.

The Administrator shall act as the Fund's executive officer, with full power of administration under the general direction of the Trustees.  The Trustees are specifically authorized to delegate to the Administrator any of the powers vested in the Trustees by this Agreement.

Section 3.  ADMINISTRATIVE PERSONNEL.  The Board of Trustees shall appoint the Administrator, actuary, Fund Counsel, auditor and such other managerial and legal and administrative staff as they deem reasonably necessary for the efficient administration of the Trust, and may delegate the appointment of Fund personnel to the Administrator.

Section 4.  DISBURSEMENT OF WELFARE FUND.  The Administrator, or any other Welfare Fund employee designated by the Trustees, may sign checks for any disbursement from the Welfare Fund approved by the Trustees.

Section 5.  EXECUTION OF NOTICES AND DOCUMENTS.  Except as specifically provided in Section 4 next above, the Board of Trustees may designate any equal number of Union Trustees and Employer Trustees to jointly execute, in writing, on behalf of the Board of Trustees, any notice or document, which executed notice or document shall be conclusive in favor of any person relying thereon.

## ARTICLE VI
## EMPLOYER CONTRIBUTIONS

**Section 1.** **IN GENERAL.** In order to fund the Benefits provided for by this Agreement, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees pursuant to regulations established by the Trustees at the times required by that agreement. The rate of contributions shall be determined by the applicable Collective Bargaining Agreements or Participation Agreements, together with any amendments, supplements or modifications thereto. Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation Agreement or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be not less than the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union having jurisdiction over the geographic area in which the covered Employees perform their work. No Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the foregoing provisions of this Section and any such contract or agreement shall be null and void. It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement. All contributions shall be paid in the manner and form required by the Trustees.

**Section 2.** **DEFAULT IN PAYMENT OF CONTRIBUTIONS.** Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity. Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment. The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed. All Employers party to or otherwise bound by this Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10% waiving the necessity of any additional proof thereof. In addition, the delinquent contributions and any payments by the Employer pursuant to an installment agreement, shall bear interest, up to the prime rate plus two points, charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied. The Trustees are hereby given the power and authority, in their discretion, to assess a lesser amount or to waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee of the Board of Trustees and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Welfare

Fund.  The Collection Committee may include trustees of the Laborers' Pension Fund as members of such Collection Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, or refuses to provide the records required to be kept by contributing employers or submit to an audit, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including but not limited to, court fees, audit fees and investigative costs.  The term "reasonable attorneys' fees" as used herein shall mean all attorneys' fees in the amounts for which the Trustees become legally obligated for actions seeking delinquent contributions, to compel an audit, or for recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees.  At the option of the Trustees the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), or in an amount consistent with the terms of the current Collective Bargaining Agreement to which the Employer is subject.  In the event an Employer is repeatedly delinquent in its contribution payments to the Welfare Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current Collective Bargaining Agreements in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency.  The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3.  REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS. The Employers shall make all reports on contributions required by the Trustees.  Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust.  The Trustees may at any time have an audit made by an independent accounting firm of the payroll of any Employer in connection with the said contributions and/or reports.  All Employers shall be required to maintain records in compliance with procedures from the beginning of such Employer's participation in the Trust until given written authorization by the Administrator, upon request, to destroy said records.  The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive.  Attached hereto as Addendum A are the current collection policies concerning the Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

## ARTICLE VII
## FILING CLAIMS AND REVIEW OF DENIAL OF CLAIM

Section 1. FILING OF A CLAIM. Claims for the payment of any Benefits shall be filed, in writing, via common carrier, U.S. mail or electronic mail, in accordance with the Rules and Regulations of the Welfare Fund.

Section 2. ADJUDICATION OF CLAIMS AND APPEALS. The Trustees shall have the authority to adopt procedures for the review of claims and appeals of claims denied in whole or in part in accordance with ERISA and regulations adopted pursuant to ERISA. The Trustees have delegated authority to decide claims to the Claims Department and to decide appeals to the Claims Committee of the Board of Trustees. The procedures may be changed from time to time at the discretion of the Board of Trustees. The current procedures for claims and appeals are set forth in the Summary Plan Description of the Welfare Fund.

The Trustees and/or the Claims Committee have full discretionary authority to determine eligibility for Benefits under the Plan and to interpret the Plan, all Plan documents, rules, procedures, and the terms of the Trust Agreement. Their decisions and interpretations will be given the maximum deference permitted by law for the exercise of such full discretionary authority, they will be binding upon all involved persons.

## ARTICLE VIII
## DUTY TO COOPERATE

All of the Trustees and all directors, officers, employees or other representatives of any Employer Association or Council party to this agreement shall be required to assist and cooperate with authorized representatives of the Welfare Fund, its attorneys, auditors, or other authorized representatives in the prosecution of claims for or against the Welfare Fund.

Specifically, an Employer shall provide to the Board of Trustees on request in the course of any audit deemed necessary or advisable by the Trustees the records set forth in the Policy for Retention and Production of Employer Records attached hereto as Addendum A.

Furthermore, any Employer who is unable to produce adequate records to enable Trustees to perform the audit, shall be deemed to have authorized the Board of Trustees to contact the Internal Revenue Service and the Illinois Department of Revenue with permission to obtain all relevant information which may have been filed with said governmental agencies by such Employer.

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

Section 1. VESTED RIGHTS. No Employee or any person claiming by or through such

Employee, including his family, dependents, beneficiary and/or legal representative, shall have any right, title or interest in or to the Welfare Fund or any property of the Welfare Fund or any part thereof except as may be specifically determined by the Trustees and required by ERISA.

Section 2.  ENCUMBRANCE OF BENEFITS.  No monies, property or equity, of any nature whatsoever, in the Fund, or policies or benefits or monies payable therefrom, shall be subject in any manner by an Employee or person claiming through such Employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null and void. The Fund shall not in any manner be liable for, or subject to the debts, contracts, liabilities, engagements or torts of any person entitled to Benefits hereunder.   Notwithstanding the foregoing, Benefits will be paid in accordance with any Qualified Medical Child Support Order as defined in Section 609 of ERISA.

Section 3.  PAYMENTS TO PERSONS UNDER LEGAL DISABILITY.  In case any Benefit payments hereunder become payable to a person under legal disability, or to a person not adjudicated incompetent but, by reason of mental or physical disability, in the opinion of the Board of Trustees, who is unable to administer properly such payments, then such payments may be paid out by the Board of Trustees for the benefit of such person in such of the following ways as it thinks best, and the Board of Trustees shall have no duty or obligation to see that the payments are used or applied for the purpose or purposes for which paid:

(a)     Directly to any such person;
(b)     To the legally appointed guardian or conservator of such person;
(c)     To any spouse, parent, brother or sister of such person for his welfare, support and maintenance; or
(d)     By the Board of Trustees using such payments directly for the support, maintenance and welfare of any such person.

Section 4.  SITUS.  The State of Illinois shall be deemed the situs of the Welfare Fund created hereunder.  All questions pertaining to validity, construction and administration shall be determined in accordance with the laws of the State of Illinois to the extent that such laws are not preempted by the laws of the United States of America.  Jurisdiction and venue for all litigation under Federal statutes shall be in the Federal District Court for the Northern District of Illinois

Section 5.  CONSTRUCTION OF TERMS.  Where the context admits in this Agreement, words in the masculine gender shall include the feminine and neuter genders, the plural shall include the singular and the singular shall include the plural.

Section 6.  NOTIFICATION OF TRUSTEES.  The address of each of the Trustees shall be provided to the Administrator by the Trustee.  Any change of address shall be effected by written notice to the Administrator.

Section 7.  SEVERABILITY.  All provisions of this Agreement are intended to comply with the applicable provisions of ERISA, the Labor Management Relations Act of 1947, as amended, the Labor-Management Reporting and Disclosure Act of 1959, as amended, and all

other applicable laws, rules and regulations. However, should any provision of this Agreement or any Collective Bargaining Agreement or Participation Agreement be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the provisions herein and therein contained unless such illegality shall make impossible or impractical the functioning of the Trust, and in such case the appropriate parties shall immediately adopt a new provision to replace the illegal and/or invalid provision.

Section 8.   COUNTERPARTS.   This Agreement may be executed in two or more counterparts, any one of which will be an original without reference to the others.

## ARTICLE X
## CHANGE OF TRUSTEE

Section 1.  RESIGNATION.  A Trustee may resign at any time by giving thirty-(30) days' advance written notice to the entity that appointed him and to the Board of Trustees. Notice to the Board of Trustees shall be mailed to it, by certified mail, at the office of the Welfare Fund.

Section 2.   REMOVAL OF TRUSTEE AND APPOINTMENT OF SUCCESSOR TRUSTEE.  A Union Trustee may be removed by the Council effective on receipt by the Board of Trustees of written notice of removal from the President/Secretary/Treasurer and Business Manager of the Council. The Council shall appoint a successor Trustee which appointment shall be effective on receipt of written notice by the Board of Trustees of the appointment from the President/Secretary/Treasurer of the Council and of a written acceptance of his appointment from the individual appointed as successor Trustee. An Employer Trustee may be removed by the Association that appointed him effective on receipt by the Board of Trustees of written notice of removal from the President of that Association. The removing Association shall appoint a successor Trustee which appointment shall be effective on receipt of written notice by the Board of Trustees of the appointment from the President of that Association and of a written acceptance of his appointment from the individual appointed as successor-Trustee. The Jointly Appointed Arbitrator may be removed at any time by majority vote of the Board of Trustees and a successor Jointly Appointed Arbitrator may be appointed by it. The appointment of a successor Jointly Appointed Arbitrator shall be effective on receipt by the Board of Trustees of a written acceptance of his appointment from the person appointed as successor. No successor Trustee shall be personally liable for any act or failure to act of a predecessor Trustee.

## ARTICLE XI
## AMENDMENT AND TERMINATION

Section 1.  AMENDMENT.  The Board of Trustees has full discretionary authority to amend this Agreement from time to time, except as follows:

    (a)    In no event shall an amendment result in an alteration of the basic principles of this Agreement.

(b)    No amendment shall result in the repayment or reversion to any Employer of any portion of the Welfare Fund.

Any amendment shall be in writing and shall be effective as of the date designated by the Board of Trustees.  The Administrator shall distribute a copy of each amendment to each Trustee and shall attach a copy thereof to the minutes of the meeting of the Board of Trustees at which it is adopted.  The Board of Trustees shall notify all necessary parties and shall execute any instrument necessary in connection with the amendment.

Section 2.  TERMINATION.  This Agreement may be terminated by written instrument executed by:

(a)    All of the Trustees when there is no longer a Collective Bargaining Agreement or Participation Agreement requiring contributions to the Welfare Fund in effect between any Employer and the Union or the Trustees; or

(b)    All of the Associations set forth in Article III, Section 2 of this Agreement (and as it may be amended from time to time) and the Union.  All necessary provisions of this Agreement shall continue in effect until all assets of the Welfare Fund allocable to Employees and beneficiaries have been distributed or applied by the Trustees.

Section 3.  NOTIFICATION OF TERMINATION.  The Board of Trustees shall notify the Council, each Employer and all persons entitled to Benefits under the Welfare Fund of the termination of this Trust Agreement within the time required by law.

IN WITNESS WHEREOF, the Trustees have executed this Restated Agreement and Declaration of Trust on the dates indicated.

Charles J. Gallagher

Date _____ 5-11-04 _____

James P. Connolly

Date _____ 5/11/04 _____

David H. Lorig

Date _____ 5/11/04 _____

Randy Dalton

Date _____ 5-11-04 _____

Dennis Martin

Date _____ 5/11/04 _____

Martin Flanagan

Date _____ 5/11/04 _____

Tim J. Scully

Date _____ 5/11/04 _____

Liberato Naimoli

Date _____ 5/11/04 _____

Roger T. Vignocchi

Date _____ 5/11/04 _____

Scott Pavlis

Date _____ 5/11/04 _____

Sam Vinci

Date _____ 5-11-04 _____

Frank Riley

Date _____ 5/11/04 _____

## ADDENDUM A

## RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
## AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1. Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2. Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3. Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4. Cash disbursement journals and general ledgers.

5. Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6. Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7. Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8. Daily time records filed by employees or supervisors.

9. Source documents and lists of job codes and equipment codes.

10. Certified payrolls for public sector jobs where such payrolls are required.

11. Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

12.  Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13.  If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above.  However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above.  In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.  The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1. Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2. Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3. When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4. An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers**. New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely, payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers.** Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

4. **Employers Subject to Special Audits**. At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers.** If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers.** Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers.** Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

# AMENDMENT TO THE
## RESTATED AGREEMENT AND DECLARATION OF TRUST
### OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

WHEREAS, Article XI of the Restated Agreement and Declaration of Trust ("Trust Agreement") provides that the Board of Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Fund") have the authority to amend the Trust Agreement;

WHEREAS, Article IV of the Fund's Trust Agreement sets forth the powers and duties of the Trustees;

WHEREAS, the Trustees have an obligation to protect the interests of the Plan's Participants and to protect the assets of the Fund;

WHEREAS, the Trustees are aware of situations in which contributing Employers have ceased business operations leaving a large indebtedness to the Fund without a reasonable likelihood of the Fund collecting such delinquent contributions;

WHEREAS, the individual officers and owners of some Employers have secured jobs knowing that they will not comply with their legal obligations to the Fund by keeping accurate records of their laborer employees' employment and make all the required contributions to the Fund; and

WHEREAS, such illegal conduct causes substantial losses to the Fund and deprives Employers who comply with its obligations to the Fund of opportunities to secure employment for their laborer employees; and

WHEREAS, the individual officers, partners or owners of some contributing Employers have used various entities to avoid liability to the Fund for contributions that would otherwise be due and then created new companies in order to continue to operate using such illegal practices;

WHEREAS, in some instances such individual officers or owners have accepted employment as a supervisor or manager with another contributing Employer and been responsible for causing such Employers to fail to comply with their obligations to keep accurate records and make all required contributions;

WHEREAS, the Trustees have determined that certain individuals and entities (as hereinafter defined "Deadbeat Employers") who engage in these practices willfully or with reckless disregard for their legal obligations or with repeated incompetence at the expense of their employees and the Fund have caused the Fund to incur large financial losses and employees to lose benefit coverage for which they had worked;

WHEREAS, the Trustees have concluded that such Deadbeat Employers' practices result in unfair competition for other contributing Employers often with the result of enriching themselves and depriving lawful Employers of needed work, and depriving the Fund's participants of benefits;

WHEREAS, it is the desire of the Trustees to amend the Trust Agreement in order expressly to provide that the Fund may impose appropriate protective financial requirements on any Employer that is owned by or that hires a Deadbeat Employer in a managerial or supervisory role;

NOW THEREFORE, the undersigned Trustees of the Fund, pursuant to the authority of Article XII of the Restated Agreement and Declaration of Trust, do hereby adopt the following Amendment to the Restated Agreement and Declaration of Trust effective as of August 1, 2006:

## I.

**The following is added as an additional Paragraph under Article I, "Certain Definitions", Section 2, "Employer":**

"A "Deadbeat Employer" is defined as any entity or individual (including, but not limited to a corporation, partnership, or sole proprietorship and its respective officers, partners or owners) who have, or previously had in the last 10 years, incurred substantial liability to the Fund for delinquent contributions and then ceased operations or became insolvent, without satisfying such substantial liability and without any reasonable likelihood of paying the amounts due to the Fund. For purposes of this Section, substantial liability shall not be less than $30,000."

## II.

**The following is added as Section (4) to Article VI, "Employer Contributions":**

"<u>Section 4. ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS</u>.

(a)    <u>EMPLOYER OWNED BY DEADBEAT EMPLOYER</u>. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b)    <u>EMPLOYER OPERATED BY DEADBEAT EMPLOYER</u>. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of

2

the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c)     PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION.  The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund.  The Notice will provide the Employer with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provisions of subsections (a) or (b), as applicable, as the Employer deems appropriate in order to avoid liability under this Section.  Any Employer, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable.  Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

(d)     MISCELLANEOUS PROVISIONS.  The bond referenced in this Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer. "

### III.

Except as hereinbefore amended, the Trust Agreement shall remain in full force and effect in accordance with its terms.

IN WITNESS WHEREOF, the undersigned Trustees have caused this Amendment to be executed on the dates appearing opposite their respective names.

| | | | |
|---|---|---|---|
| _(signature)_ | | _(signature)_ | 9/19/06 |
| **CHARLES J. GALLAGHER** | **DATE** | **JAMES P. CONNOLLY** | **DATE** |
| _(signature)_ | 9/19/06 | _(signature)_ | 9/19/06 |
| **ALAN ESCHE** | **DATE** | **RANDY DALTON** | **DATE** |
| _(signature)_ | 9/19/06 | _(signature)_ | 9/19-06 |
| **RICHARD E. GRABOWSKI** | **DATE** | **MARTIN FLANAGAN** | **DATE** |
| _(signature)_ | 9/19/06 | _(signature)_ | 9/19/06 |
| **DAVID H. LORIG** | **DATE** | **LIBERATO NAIMOLI** | **DATE** |
| _(signature)_ | 9/19/06 | _(signature)_ | 9/19/06 |
| **DENNIS MARTIN** | **DATE** | **SCOTT PAVLIS** | **DATE** |
| _(signature)_ | 9/19/06 | _(signature)_ | 9/19/06 |
| **TIM J. SCULLY** | **DATE** | **FRANK RILEY** | **DATE** |