IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds, <br> Plaintiffs, <br> v. <br> ORLOWSKI CONSTRUCTION, INC., a dissolved Illinois corporation, and ORLOWSKI COMPANY, INC., an Illinois corporation, and WESLEY J. ORLOWSKI, f/k/a WIESLAW J. ORLOWSKI, individually, <br> Defendants. | Case No. 08 C 35 <br><br> Judge BUCKLO |

## AFFIDAVIT OF DENISE AYALA

DENISE AYALA, being first duly sworn on oath, deposes and states as follows:

1. I am the Director of Dues employed by the Construction and General Laborers' District Council of Chicago and Vicinity (hereinafter "Union"). My responsibilities include oversight of the collection of amounts owed by Defendants Orlowski Construction, Inc. and Orlowski Company, Inc., (hereinafter "Company 2"). This Affidavit is submitted in support of the Laborers' Funds' Motion for Entry of Judgment in Sum Certain. I have personal knowledge regarding the statements contained herein.

2. On May 1, 2007, Company 2 signed an Independent Construction Industry Collective Bargaining Agreement ("Agreement") with the Union and Laborers' Local Union No. 6. A true and accurate copy of the Agreement is attached hereto as Exhibit E-



EXHIBIT E

1. Pursuant to the terms of the Agreement, the Company is bound to the terms of the relevant collective bargaining agreements incorporated by reference in the Agreement, and the Funds' respective Agreements and Declarations of Trust.

3. Pursuant to agreement, the Funds have been duly authorized to act as collection agents on behalf of the Union for union dues owed to the Union.

4. The Agreement and collective bargaining agreements incorporated therein require that the Company submit union dues reports and payments by the tenth day of the following month. Payments which are not received by that date are assessed liquidated damages in the amount of 10 per cent of the principal amount of dues owed. A copy of the relevant portions of the collective bargaining agreement is attached as Exhibit E-2

5. Company 2 submitted its January through April, 2008 benefits reports which are attached hereto as Exhibit E-2 and which will hereinafter be referred to as "Reports". On the Reports, Company 2 identified the Laborer by social security number and name, and how many hours worked each week of the month by the Laborer. From the Reports, I created a spreadsheet in which I took the monthly hours worked by the Laborers and multiplied it by the Agreement's hourly pay rate of $33.15 and then multiplied that figure by the Agreement's contribution rates for dues, LDCMC, LECET, and CAICA, and then multiplied that total by 10% for liquidated damages revealing the following amounts owed by Company 2:

| | |
|---|---|
| January, 2008 | $ 371.72 |
| February, 2008 | $ 371.72 |
| March, 2008 | $ 185.86 |
| April, 2008 | $ 464.65 |
| SUB TOTAL | $1,393.95 |
| 10% Liquidated Damages | $ 139.40 |

|  |  |
|---|---|
| **TOTAL** | **$1,533.35** |

A true and accurate copy of my spreadsheet is attached hereto as Exhibit E-3.

FURTHER AFFIANT SAYETH NAUGHT.

*/s/ Denise Ayala*
Denise Ayala

Subscribed and sworn to before me
this 17th day of June, 2008.

*/s/ James T. Peacock*
Notary Public

"OFFICIAL SEAL"
James T. Peacock
Notary Public, State of Illinois
My Commission Expires 7-31-2011

# CONSTRUCTION & GENERAL LABORERS
# DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-4209 • FAX: 630/655-0853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **ORLOWSKI COMPANY INC** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** [body text]

2. **Labor Contract.** [body text]

3. **Total economic Increase.** [body text]

4. **Dues Checkoff.** [body text]

5. **Work Jurisdiction.** [body text]

6. **Subcontracting.** [body text]

7. **Fringe Benefits.** [body text]

8. **Contract Enforcement.** [body text]

9. **Successors.** [body text]

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2006 (unless dated differently below) through May 31, 2010, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. [body text]

11. **Execution.** [body text]

Dated: **MAY 1**, 20 **07**.                          **ORLOWSKI COMPANY INC**
                                                              (Employer)
ACCEPTED:
Laborers' Local Union No. **6**                FEIN No. **35-2272127**

By: _____                    By: **EWA ORLOWSKI**
CONSTRUCTION AND GENERAL LABORERS'                    (Print Name and Title)
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____                    _Ewa Orlowski_ (Signature)
   James P. Connolly, Business Manager

By: _____                    **2524 W. HURON ST.**
   Frank Riley, President & Secretary-Treas.          (Address)

For Office Use Only: _____            **Chicago ILL 60612-1105**
                                                      (City, State and Zip Code)

                                                **773-988-0658**
                                                      (Telephone/Telefax)

Effective June 1, 2006    WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER


EXHIBIT E-1

[Stamp: RECEIVED JUL 26 2007 FIELD DEPT.]

JUNE 1, 2006 TO MAY 31, 2010

# AGREEMENT

between the

**CHICAGO AREA INDEPENDENT CONSTRUCTION ASSOCIATION**

and the

**CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY**

affiliated with the

**LABORERS' INTERNATIONAL UNION OF NORTH AMERICA**

36


EXHIBIT E-1

| Article | | Page |
|---|---|---|
| XIX | REPORTING FOR WORK | 52 |
| XX | PAYDAY | 53 |
| XXI | WAGES | 53 |

ROAD BUILDING:

| | | |
|---|---|---|
| XXII | HOURS AND OVERTIME | 55 |
| XXIII | HOLIDAYS | 56 |
| XIV | SHIFT WORK | 56 |
| XXV | PAYDAY | 57 |
| XXVI | REPORTING FOR WORK | 58 |
| XXVII | WAGES | 59 |

SEWER, TUNNEL AND RELATED UNDERGROUND:

| | | |
|---|---|---|
| XXVIII | JOB NOTIFICATION AND PRE-JOB CONFERENCE NOTIFICATION | 61 |
| XXIX | WAGES | 62 |
| XXX | WORK HOUR, OVERTIME HOLIDAYS AND ELECTION DAYS | 63 |
| XXXI | SHIFT WORK | 65 |
| XXXII | WORK RULES AND CONDITIONS | 66 |

KANE, KENDALL, McHENRY AND BOONE:

| | | |
|---|---|---|
| XXXIII | WORKING CONDITIONS | 69 |
| XXXIV | WAGES | 69 |

WILL AND GRUNDY:

| | | |
|---|---|---|
| XXXV | STEWARDS | 72 |

[Previous page, continued:]

| | | Page |
|---|---|---|
| | ... | 5 |
| | ... EQUAL OPPORTUNITY | 5 |
| | ... | 6 |
| | CHECK OFF & DUES DEDUCTIONS | 6 |
| | SUB-CONTRACTING | 8 |
| | WAGES | 9 |
| V | BONDING | 15 |
| VI | INDUSTRY FUND | 17 |
| VII | PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS | 18 |
| | STEWARDS | 22 |
| IX | TRAINING AND APPRENTICE PROGRAM | 24 |
| X | SETTLEMENT OF DISPUTES | 26 |
| XI | BRANCHES OF WORK | 28 |
| XII | ALCOHOL AND SUBSTANCE ABUSE | 44 |
| XIII | SUCCESSORS AND ASSIGNS | 45 |
| XIV | HOURS AND OVERTIME | 45 |
| | MULTIPLE SHIFTS | 46 |
| | HOLIDAYS AND ELECTION DAYS | 47 |
| | PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS | 48 |

3

| Article | | Page |
|---|---|---|
| XXVI | WAGES | 73 |
| XXVII | FOREMAN AND GENERAL FOREMAN | 76 |
| XXVIII | SHIFT WORK | 77 |
| XXIX | OTHER PAY RATES | |
| XXX | BUILDING CONSTRUCTION AND HIGHWAY | 77 |
| | ... | 80 |
| | ... | 80 |
| | ... | 83 |

4

## TERM OF CONTRACT

This AGREEMENT entered into this 1st day of June, 2006, for Cook, DuPage, Lake, Will, Grundy, Kendall, Kane, McHenry and Boone Counties by and between the CHICAGO AREA INDEPENDENT CONSTRUCTION ASSOCIATION, hereinafter referred to as EMPLOYER, and CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, for and on behalf of its affiliated Local Unions, hereinafter referred to as the UNION, shall remain in full force and effect until 11:59 p.m. on May 31, 2010.

If either party wishes to modify this Agreement, it shall serve written notice by certified or registered mail, upon the other party not less than sixty days prior to May 31, 2010 of its intent to begin negotiations for a new Agreement. In the absence of the service of such notice, this Agreement shall automatically renew itself, together with all amendments and improvements as negotiated after said initial expiration date, by and between the parties in area-wide bargaining, from year to year thereafter.

## Article 1
## EQUAL OPPORTUNITY

The parties agree that Employees will not be discriminated against because of race, creed, religion, color, age, sex or national origin.

The masculine gender has been used in this Agreement to facilitate ease of writing and editing and therefore the masculine gender shall include the feminine gender. Whenever the words "he", "him", "his", or "man" is used, they shall be read and construed as "he or she", "him or her", "his or hers", and "man or woman", respectively.

5

## Article 4
## SUBCONTRACTING

**Paragraph 1.** On work covered by this Agreement, the contractor or subcontractor agrees to see that all subcontractors on work within the Union's jurisdiction on this job site adhere to the wages and fringes contained in this Agreement when the subcontract is let by the contractor or subcontractor. If, upon the Union's request, the subcontractor chooses to sign a current labor agreement with the Union (although such signing might not be required under Paragraph 1), then the contractor shall be relieved of any liability under this Paragraph 1.

**Paragraph 2.** The Employer agrees that it will not contract or subcontract any work covered by this Agreement to be done at the site of construction, alteration, painting or repair of a building, structure of other work, except to a person, firm or corporation that is party to the applicable collective bargaining agreement with the Union.

**Paragraph 3.** If an Employer, bound to this Agreement, contracts or subcontracts any work covered by this Agreement to be done at the jobsite of the construction, alteration, painting or repair of a building, structure or other work to any person or proprietor who is not signatory to this Agreement, the Employer shall require such subcontractor to be bound by all the provisions of this Agreement, or the Employer shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payments to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund, and the Construction and General Laborers' District Council of Chicago and Vicinity Joint Apprentice and Training Trust Fund.

8

## Article 5
## WAGES

**Paragraph 1.** The rates of wages exclusive of fringe benefits to be paid in this trade for the period June 1, 2006 to and including May 31, 2010, shall be as set forth below for the respective following classifications as further defined herein.

The wage rates include a total economic increase of $2.90 per hour effective June 1, 2006 to May 31, 2007 to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion, for a wage rate of $31.55 per hour, which includes the dues deduction; June 1, 2007 to May 31, 2008, $3.00 per hour total economic increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion; June 1, 2008 to May 31, 2009, $3.00 per hour total economic increase to be allocated between wages and fringe benefits by the Union in its sole discretion; June 1, 2009 to May 31, 2010, $3.10 per hour total economic increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. The foregoing allocations may include allocations to LECET and LDC/LMCC.

**Dosimeter Use:** A premium of One ($1.00) Dollar per hour shall be paid to any Laborer required to work with a dosimeter used for monitoring nuclear exposure or with any similar instrument or measuring device.

**Power Pac:** When a Laborer uses a power driven piece of equipment he shall be paid the rate of pay of the tool at the end of the power pac.

**Apprentice wages:** Apprentice Laborers shall be paid according to the following schedule:

Apprentices (1st 6 months) . . . . . . . . . 60% of base rate:
Apprentices (2nd 6 months) . . . . . . . . 70% of base rate:
Apprentices (3rd 6 months) . . . . . . . . 80% of base rate:
Apprentices (4th 6 months) . . . . . . . . 90% of base rate:
Apprentices (after 24 months) . . . . . . 100% of base rate:

9

Should the Union enter into an agreement with the Builders Association of Greater Chicago, the Mason Contractors Association of Greater Chicago, the Illinois Road and Transportation Builders Association, the Underground Contractors Association, the Fox Valley General Contractors Association, the Lake County Contractors' Association, or the Contractors Association of Will and Grundy Counties that provides an annual total economic increase different than the annual total economic increase set forth in this paragraph, then such rates shall be incorporated into the applicable portion(s) of this Agreement that correspond to the trade and geographic scope of such association agreement.

Paragraph 2. **WELFARE:** Beginning the period from June 1, 2006 to May 31, 2007, the Employer agrees to make Health and Welfare contributions of $7.46 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages herein stipulated. This $7.46 per hour shall be paid to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity or a designated appointee at the end of each month.

That for the periods June 1, 2007 to May 31, 2008; June 1, 2008 to May 31, 2009; June 1, 2009 to May 31, 2010; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Paragraph 1 above)

The Employer agrees to bound by the Agreements and Declarations of Trust establishing the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, as well as any amendments thereto.

Paragraph 3. **PENSION:** Beginning June 1, 2006 the Employer agrees to make a pension contribution of $4.84 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages and welfare payments herein stipulated. This $4.84 per hour shall be paid to the Laborers' Pension Fund or to a designated appointee at the end of each month.

That for the periods June 1, 2007 to May 31, 2008; June 1, 2008 to May 31, 2009; June 1, 2009 to May 31, 2010; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Paragraph 1 above)

The Employer agrees to bound by the Agreements and Declarations of Trust establishing the Laborers' Pension Fund, as well as any amendments thereto.

The parties agree that the Employer shall make lump sum contributions to employee fringe benefit accounts, administered by the Trustees on behalf of each employee. It is further agreed that such contribution shall be accompanied by a breakdown of payment according to appropriate benefits.

The Trustees of the Welfare Fund and the Trustees of the Pension Fund shall, among other things, have authority to determine the type and amount of benefits to be provided in each of said funds, the eligibility rules governing entitlement to benefits, and whether and to what extent benefits are to be provided for covered Employees.

The failure of the Employer to contribute to the said Welfare or Pension Funds when the same is established, as provided herein, shall for the purposes of the remedies the Union may pursue, be deemed the same as the failure of the Employer to pay wages, and the Union shall be permitted to remove workers whom they represent for non-payment of such contributions, anything to the contrary in this Agreement notwithstanding.

A grace period of thirty (30) days shall be granted for Employers to submit reports and contributions as provided. Said reports and contributions not received during this grace period shall be assessed liquidated damages

amounting to ten (10%) percent of the amount of the contributions which are owed. The Employer acknowledges that the liquidated damages shall be used to defer administrative costs arising by said delinquency and acknowledges the costs to be actual and substantial, though difficult to ascertain. However, the Employer acknowledges these costs to be at a minimum of ten (10%) percent, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions shall bear interest at a maximum legal rate of interest per annum from the due date until they are paid.

Further, in the event the Trustees refer the account to legal counsel for collection, the delinquent Employer shall be liable for reasonable attorneys' fees, and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc.

Reasonable attorneys' fees shall mean: All reasonable attorneys' fees in the amounts for which the Trustees become legally bound to pay, including recovery of liquidated damages, interests, audit costs, filing fees, and any other expenses incurred by the Trustees.

The Trustees of the aforementioned Welfare and Pension Funds and the Union shall have the authority to audit the books and records of a participating Employer, either directly or through their authorized representative, whenever such examination is deemed necessary for the purpose of compliance with the provisions of this Agreement, including the obligation to remit Union Dues under Article 3.

Each participating Employer shall make its books and records available to the Trustees for such purpose. In the event the audit discloses that the Employer, during the period of the audit, has underpaid its contributions and/or wages, the Employer shall be liable for the costs of the examination, including but not limited to, audit fees and reasonable attorneys' fees. The Trustees' authority to waive any costs shall be governed by the terms of the Trust Agreement.

12

**Paragraph 4. Appointment of Trustees to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund.** The parties agree that the Employer-appointed trustees of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund and training and apprentice funds to which Employers are required to contribute shall be appointed solely by Employer associations that enter into collective bargaining agreements with the Union requiring contributions to such funds ("Signatory Associations"). It is further agreed that the Trust Agreements establishing such funds shall be amended to replace any Employer association that appoints a trustee and does not have a labor agreement with the Union, replacing it with a Signatory Association. The Union and Signatory Associations shall meet within 30 days of the effective dates of agreements covering a majority of Fund participants to review the appointment of Employer Trustees of the funds. It is agreed that the numbers of hours contributed by Employers represented by Signatory Associations compared to contributions by other Signatory Associations during the preceding year shall be the basis for assigning the number of trustee appointments. If such parties are unable to agree on the Signatory Associations to be responsible for appointments and the number of appointments to be made by each Signatory Association the dispute shall be submitted to expedited arbitration under Subpart D of the Policies and Procedures of the Federal Mediation and Conciliation Service.

**Paragraph 5.** Article III Section 2 of the trust agreements of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund shall be amended to include the following: "Association-appointed Trustees must be full-time employees of Contributing Employers within the Association's membership. A Contributing Employer shall be defined as an

13

Employer that has employed an average of five (5) or more Laborers performing bargaining unit work for whom contributions have been made per month in each of the previous three (3) calendar years."

**Paragraph 6. Section 415 Excess Benefit Fund:** A Section 415 Excess Benefit Fund shall be established for the purpose of providing alternative benefit to any employees of the Employer who become unable to receive the entire amount of the accrued pension benefits to which they would be entitled under one or more of the pension plans sponsored by their Employer because of limitations established by Section 415 of the Internal Revenue Code. The Employer may be required and directed by the Board of Trustees of the Excess Benefit Fund to contribute a portion of its agreed-upon "pension" contribution to the Section 415 Excess Benefit Fund and shall not increase the Employer's cost beyond the amount that the Employer is obligated to contribute to the Laborers' Pension Fund and that the funding of the Section 415 Excess Benefit Fund shall be fully tax deductible to the Employer for Federal Income Tax purposes. The Employer hereby agrees that the Board of Trustees of any such Section 415 Excess Benefit Fund shall be authorized to determine each year the amount that will be contributed by the Employer and the amount to be credited to the account of any eligible retiree for payment in lieu of accrued benefits that would exceed the limits set by Section 415 of the Internal Revenue Code.

**Paragraph 7.** The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Vacation Fund, a jointly-trusteed vacation plan established for the purpose of providing income to members during their winter layoffs. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

**Paragraph 8.** The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Annuity Fund, a jointly-trusteed defined contribution plan providing a supplemental retirement benefit. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

**Paragraph 9. SUPERVISORS:** To the extent permissible by the Internal Revenue Service or any Federal Act, and for the purposes of Paragraphs 2 and 3 of this Article for this Agreement only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor Management Relations Act, as amended; and who at one time were Employee members of the bargaining unit herein on whose behalf contributions were required to be made to the trust funds described in the aforesaid Paragraph 2 and 3 of this Article.

**Paragraph 10. Special Rules for Bonding.** An employer that is owned or managed, in whole or part, by an individual who currently has or previously had in the last ten (10) years ownership or principal managerial responsibility for another contributing employer that currently is or ceased doing business when delinquent to the Funds shall be required to post for the benefit of the Funds an additional cash bond or obtain a surety bond from a Fund-approved insurer in an amount equal to twice the amount of the other contributing employer's delinquency. This amount may be adjusted by the Benefit Fund Trustees for each individual employer. This bond shall be in addition to and separate from the bond required elsewhere in this Agreement.

## Article 6
## BONDING

**Paragraph 1.** All Employers shall procure, carry and maintain a surety bond in form and amount satisfactory to the Union, but not less than in the principal sum of $5,000.00, to guarantee payment of wages, Pension and Welfare Trust contributions, during the term of this

14

15

Agreement. The bond shall be placed in the custody of the Pension and Welfare Funds.

**Paragraph 2.** If the Employer employs between seven (7) and ten (10) Laborers, the surety bond shall be increased to $15,000. If the Employer employs between eleven (11) and twenty (20) Laborers, the surety bond shall be increased to $25,000. If the Employer employs twenty-one (21) to forty (40) Laborers, the surety bond shall be increased to $35,000. If the Employer employs forty-one (41) or more Laborers, the surety bond shall be increased to $45,000.

**Paragraph 3.** Contractors shall be required to obtain an appropriate bond within thirty (30) days of executing this Agreement, which bond may also be posted in cash. Should the Employer fail to comply with the provisions of Paragraphs 1-3 of this Article, the Union may withdraw its employees or strike until such compliance occurs, and the Employer shall further be liable for all costs, including attorneys fees, incurred in enforcing these provisions.

**Paragraph 4.** The Employer shall give notice to the Union and the appropriate Fund Office in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:

(a) Formation of Partnerships;
(b) Termination of business;
(c) Change of name commonly used in business operation;
(d) Change in form of business organization;
(e) Incorporation of business;
(f) Dissolution of corporation;
(g) Name and business organization of successor; and
(h) Admission to or withdrawal from any association operating as a multi-employer bargaining unit.

16

## Article 7
## INDUSTRY FUND

**Paragraph 1.** Each Employer shall pay into an industry advancement fund the amount of eight cents ($.08) for each hour worked for the Employer by those of his Employees covered by this Agreement. This payment shall be collected for and remitted only to funds as provided under written agreements between an employer association and the Union.

Each Employer shall pay into the Chicago-Area Laborers-Employers Cooperation and Education Trust ("LECET"), the amount of five cents ($.05) for each hour worked for the Employer by those of his Employees covered by this Agreement, or such additional amounts as the Union may in its sole discretion allocate from the annual total economic increase.

Each Employer shall pay into the Laborers' District Council Labor Management Cooperation Committee ("LDC/LMCC"), the amount of twelve cents ($.12) for each hour worked for the Employer by those of his Employees covered by this Agreement, or such additional amounts as the Union may in its sole discretion allocate from the annual total economic increase.

**Paragraph 2.** The Employer agrees to be bound by the Agreement and Declaration of Trust establishing the Industry Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of said Industry Fund pursuant to said Agreement and Declaration of Trust and amendments thereto. The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the LECET and LDC/LMCC, as well as any amendments thereto.

**Paragraph 3.** Inasmuch as the existence and utilization of this Industry Fund should result in increased construction and, therefore, in increased construction job opportunities for Employees, the Union agrees to cooperate in assuring that the contributions required by this

17